[Civ. No. 10694.  Third Dist.  Dec. 10, 1963.]

YVONNE MARIE ARATA, a Minor, etc., et al., Plaintiffs and Appellants, v. BANK OF AMERICA, as Executor etc., Defendant and Respondent; HELENE KEITH, Defendant and Appellant.

200

Donald D. Boscoe and Maxwell Freeman for Plaintiffs and Appellants and Defendant and Appellant.

Mazzera, Snyder & DeMartini and James DeMartini for Defendant and Respondent.

VAN DYKE, J.*—This is an appeal from a judgment, based on a directed verdict, in an action brought by two minors to enforce against the estate of Silve G. Arata two contracts for their support and maintenance.

The plaintiffs are the illegitimate children of decedent, and the contracts sued upon were alleged to have been made with the mother of the infants for their benefit.

The allegations of the complaint with respect to the contracts are as follows: While the mother of the minors, Helene Keith, was pregnant with the older of the two plaintiffs, having conceived the child as a result of acts of sexual intercourse with Arata, the two, Arata and Helene, entered into an oral contract, as follows: That Helene would vacate her residence in Stockton and move to the City of Lodi or to any other locality in which Arata would provide a home for her and the expected child should the child be born living; that from birth the mother would personally maintain physical custody and control of the child until it reached the age of 21 years; that the child would be given the surname of Arata and would be reared as Arata's child in every manner and respect; that Helene would continue to reside with the child in Lodi, or in any other locality in which Arata would pro-

*Retired Presiding Justice of the District Court of Appeal sitting pro tempore under assignment by the Chairman of the Judicial Council.

vide them with a home; that Arata was the father of the expected child and was morally and legally responsible for its support; that he would support and educate the child in a manner suitable to his own station in life, circumstances and standard of living, until the child attained majority; that Arata would pay to the mother a sum of not less than $500 per month for the aforesaid purposes of support, maintenance, education and residence until the child should have attained majority, and would pay all medical and hospital expenses incurred incidental to delivery. The contract with respect to the second child, born after the death of Arata, was alleged to have been in the same terms, save as to amount, as the contract for the first child.

Over the objections of respondent, based upon section 1880, subdivision 3, of the Code of Civil Procedure, Helene was permitted to testify as to the making and terms of the two contracts, and her testimony affords the only proof in that respect. It was as follows: After a considerable period of intimacy, Helene suspected pregnancy and informed Arata of her suspicions. Arata took her to his personal physician, telling her that she was not to worry, that he hoped she was pregnant, and that he would take care of the baby. When the physician assured them of the pregnancy, Arata reaffirmed his intention to take care of the child. When Helene began to show, she told him she wanted to leave Stockton and go to live in the Bay Area. He then promised that if she would get off welfare, name the child "Arata" and, for her confinement, move to Lodi, California, instead of the Bay Area, he would pay her $500 per month to raise the child to age 21 and would provide for the child and a home for the two. Helene thereupon moved to Lodi to a place of Arata's selection, was in due time delivered of the child, named the child Yvonne Marie Arata, and since that time has continuously kept and cared for her. The child was born October 15, 1959. Mother and child were constantly visited by Arata in the home he was renting for them and Arata paid to Helene the monthly sum of $500. Their intimacies continued and in November 1960 Helene again became pregnant by Arata. She told Arata of her pregnancy and stated to him that she did not want to have another baby, but he replied that they loved each other, that they then had the little girl and that now, perhaps, they could have a boy. He reminded her that he had lived up to what he had promised to do, to give her $500 per month for the daughter; that all he had asked of her in

return was to name her "Arata" and to live where he could see her. He asked her to have the second child, saying it might be a son and that he would give her $300 a month or more if necessary to raise it, and again would ask nothing in return save that it be named "Arata" and that it live in the home to be provided by him for Helene and the children. Claims were filed against the estate on behalf of the children, were rejected and this action was begun.

Since the proof of the contracts rested wholly in the testimony of the mother, since it was received over repeated and continued objection by respondent based on the statute, since the court denied a motion to strike at the end of the trial and based its order granting a motion for directed verdict upon other grounds, respondent asks us, pursuant to section 956, Code of Civil Procedure, to review the rulings admitting the testimony and denying respondent's motion to strike and if we find the evidence inadmissible to affirm the judgment appealed from for want of evidence on the vital issue of contract or none. Admittedly, if this evidence had not been received, a motion for directed verdict would have lain and a judgment based upon the want of testimony to prove the contracts would have been unassailable.

When the action was begun, Helene was not a party. The allegations were that the contracts were made expressly for the benefit of the children, although made by Arata with her. Therefore, she did not join in the action. Respondent executor moved in the trial court for an order bringing her in as an indispensable party plaintiff. She was ordered into the cause as a plaintiff, not as an indispensable party to the action, but as a necessary party thereto, and the order provided that if she refused to come in as a party plaintiff she should be joined as a defendant. She did refuse and was joined as a defendant and in that capacity filed an answer admitting material allegations of the complaint of the children. The history of section 1880, subdivision 3, Code of Civil Procedure and the constructions placed thereon by our courts in the past are fully discussed in *Trabin* v. *Title Ins. & Trust Co.*, 52 Cal.2d 149 [339 P.2d 136]. There, Trabin as plaintiff brought an action against a Mr. and Mrs. Kauffman, husband and wife, and sought at the trial to examine Mrs. Kauffman under section 2055 of the Code of Civil Procedure. The executors of the estate of Mr. Kauffman, who had died, objected to her giving any testimony, claiming her disqualification as a witness. The objection was overruled and her testimony was

such, along with other testimony offered, as to warrant judgment against the executors, if admissible. The court noted that it had been consistently reluctant to extend the effect of the code provisions beyond what it had been compelled to do by its language and that in many cases the statute had been narrowly construed against disqualification and in favor of admissibility. It said there was no sound basis for concluding that the code section, when considered in the light of its background and purpose, disqualified Mrs. Kauffman as a witness; that she had been joined as a defendant on the theory that she and Mr. Kauffman were joint obligors, and her testimony tended to establish her own responsibility, as well as that of the estate. The court said, at page 153: "... In keeping with the purpose of the statute, the word 'Parties' in subdivision 3 of section 1880 must be construed as referring to those persons who *assert claims* against an estate. (*Todd* v. *Martin*, 4 Cal. Unrep. 805, 810-811 [37 P. 872].) Mrs. Kauffman was not such a party, and the trial court properly refused to disqualify her as a witness."

We think this decision is determinative of the issue we are discussing and supports the trial court's ruling admitting the testimony of Helene. It appeared without dispute that she had at no time made a claim against the Estate of Arata based upon the contracts for the support of the minors, that the time for presenting such a claim had passed before she was made a party, and that in her answer she had disclaimed any right to recover against the estate. She was, therefore, a competent witness.

The stated grounds for the order directing a verdict were two: (1) that Helene and the two infants were joint obligees under the contracts as pleaded and proved, that the consideration was indivisible, that the rights were joint rights and could only be enforced jointly and that Helene's renunciation of any claim arising under the contracts as joint obligee was fatal to the enforcement of the agreements by her coobligees; (2) that the consideration, in part, moving from Arata was the continuation of the meretricious relations between Helene and Arata rendering the contracts unenforceable.

We think it cannot be said, as a matter of law, that Helene and the two children were joint obligees.

The pleadings on behalf of the minors charged that the contracts were made for their benefit and the evidence received sufficiently supports that allegation. Without repeat-

ing the testimony of Helene in toto, the following portions thereof support the claim that the contracts were made for the benefit of the children and that any benefit which might have been received by Helene was incidental only to securing for the children the benefits they were to receive. Thus before the birth of the first child Arata, when pregnancy was ascertained, said to Helene: " 'I want you to move to Lodi. Get off of Welfare, and' he said, 'I'll give you $500.00 to provide for the child and for the home.' ... Q. When he promised to give you the $500.00 a month as you have testified did he ask you to do anything in return? A. No, just take care of the child." Concerning the second pregnancy, Helene testified that when she told Arata she was again pregnant, and that she didn't want another baby, he said: " 'Well, I love you and you love me, we have Yvonne, you wanted a little girl and now perhaps we can have a little boy. Up to now I have lived up to what I had promised to do, to give you the $500.00 for Yvonne, and all I asked of you in return was to name her 'Arata' and to live where I could see her, and please,' he says 'let's have this baby and maybe we'll have a son and I'll give you $300.00, or more, if necessary, a month to raise him, and all I ask of you in return is as I did before, is to name it 'Arata' and to live here in this house that I bought for you.' "

"A contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it." (Civ. Code, § 1559.) ▮ "The test for determining whether a contract was made for the benefit of a third person is whether an intent to benefit a third person appears from the terms of the contract. (*Le Ballister* v. *Redwood Theatres, Inc.*, 1 Cal.App.2d 447, 449 [36 P.2d 827].)" (*Johnson* v. *Holmes Tuttle Lincoln-Mercury, Inc.*, 160 Cal.App.2d 290, 297 [325 P.2d 193].) ▮ The intent to make the obligation inure to the benefit of a third party must be clearly manifested by the contracting parties in order for the beneficiary to maintain an action. (*Shutes* v. *Cheney*, 123 Cal.App.2d 256, 262 [266 P.2d 902]; *Fruitvale Canning Co.* v. *Cotton*, 115 Cal.App.2d 622, 625 [252 P.2d 953].) ▮ The contract does not have to be for the exclusive benefit of a third party to be enforceable by him; both contracting parties can receive benefits under an enforceable third party beneficiary contract. (*Stanton* v. *Santa Ana Sugar Co.*, 84 Cal.App. 206, 209 [257 P. 907]; *Miles* v. *Miles*, 77 Cal.App. 219, 228 [246 P. 143]; *Le Ballister* v. *Redwood*

*Theatres Inc., supra,* 1 Cal.App.2d 447, 448; *Hartman Ranch Co.* v. *Associated Oil Co.,* 10 Cal.2d 232, 247 [73 P.2d 1163].)

We think both the pleading and the proof meet the tests imposed by the foregoing authorities and that therefrom the jury could have concluded that appellants were entitled to enforce the oral contracts as having been expressly for their benefit. Arata, as the natural father of appellants, had a moral and legal duty to support them and could have been compelled to do so. (Civ. Code, § 196a.) The evidence shows him to have been completely willing to perform his obligations. It was shown that he looked forward with pleasure to the birth of each and that after Yvonne was born his love for and his interest in her was that which a father would have. Although he promised to pay money to Helene each month, it is clear that it was to be used for housing, raising and educating the children. This is shown by his statements that all he asked in return as to either child was that Helene give the children his family name, that she keep them and care for them and live with them nearby where he could have ready access to them. The jury could have found that although she would incidentally benefit, for instance as by receiving housing, shelter and food out of the money she received, such benefits were incidental and perhaps necessarily received in order that she could perform her obligations to raise the children. The evidence supports a conclusion that Arata was financially able to perform the obligations he undertook. After the birth of Yvonne, and up to his death, which occurred before the birth of the younger child, the evidence was that he kept in constant touch with Yvonne and Helene, visited them with great frequency, and faithfully performed his agreement to furnish the money necessary for Yvonne's care.

That payments were made to Helene directly does not prevent the existence of third party beneficiary contracts.

"... It is true that under a contract for the benefit of the third person performance is usually to be rendered directly to the beneficiary, but this is not necessarily the case. (See Rest. Contracts, § 133, comment d; 2 Williston on Contracts (3d Ed. 1959) 829.)" (*Lucas* v. *Hamm,* 56 Cal.2d 583, 590 [15 Cal.Rptr. 821, 364 P.2d 685].)

In this case performance could not have been satisfactorily made directly to Yvonne because of her age. Payment to Helene was reasonable and natural and not inconsistent with the existence of third party beneficiary contracts.

The jury could have found that these contracts were entirely the products of the desire of Arata to care for his children notwithstanding their illegitimate birth; that he exacted the promise of Helene to keep the children with her and care for them in a home to be provided by him and located according to his desires, as a means, not of benefiting Helene, but as an implementation of his determination to care for his children; and that these contracts to attain these ends were expressly made for the benefit of the children and for their benefit alone. As pleaded and as proved, the contracts were not joint.

Respondent seeks to sustain the directed verdict upon the ground that as a matter of law the contracts were tainted with illegality in that part of the consideration therefor was the continuation of meretricious relations between Arata and Helene. The trouble with this argument is that it does not appear as a matter of law that such was the case. From the evidence the jury could have found that the continuation of meretricious relations formed no part of the consideration for the agreement of Arata to support his children. It is true that the evidence showed that such relations were continued up to the time of his death, but there is nothing in the testimony which expressly supports the proposition that the continuation of such relationships was a part of the consideration for the agreements to support. Although this might have been found by the jury to have been a part of the consideration for the support payments, the matter could not be decided without submission to the jury upon proper instructions. The possibility that the contracts were so tainted that a court should refuse to enforce them was for the jury to determine.

The judgment is reversed.

Pierce, P. J., and Schottky, J., concurred.

A petition for a rehearing was denied January 6, 1964, and respondent's petition for a hearing by the Supreme Court was denied February 5, 1964.