[Civ. No. 30997.   Second Dist., Div. One.   July 24, 1967.]

ARTHUR DOCTOR, Plaintiff and Appellant, v. LAKE-RIDGE CONSTRUCTION COMPANY et al., Defendants and Respondents.

Richard L. Hecht for Plaintiff and Appellant.

Flint & MacKay and Edwin Freston for Defendants and Respondents.

LILLIE, J.—Plaintiff, as purchaser of a vacant hillside lot in the Lake Hollywood area, sought damages and, in the alternative, rescission and restitution by reason of certain fraudulent representations respecting the suitability of the parcel for construction of a dwelling thereon. He appeals from an adverse judgment, contending that the evidence was insufficient to support certain material findings.

In 1962, at the time of the transaction, the property in suit was owned by defendant Lakeridge, and the claimed misrepresentations were orally made by its agents, including defendant Jones. Defendant Compton, as executor, was said to be liable upon the theory that his testate, C. J. Milliron, who died during the pendency of the trial, had assumed the debts of Lakeridge following that company's dissolution; responsibility also assertedly attached to Milliron upon the theory

that the bulk of the purchase price was paid to Milliron in the form of a trust deed which benefits were retained by him without any repudiation of the fraud practiced upon plaintiff by the other defendants.

We hereinbelow summarize the background facts. Plaintiff admittedly is a developer of properties upon which he constructs improvements with builders as joint venturers; thus, shortly prior to the present transaction he was the owner of 28 multiple dwelling units, participating in the construction of some 9 such buildings. The holder of a real estate broker's license, plaintiff also had an interest in unimproved properties, some of which were hillside lots. In March and April of 1962, prior to entering into the purchase escrow, he inspected the subject parcel (Lot 20) and another parcel across the street (Lot 21) with one Puskin, a licensed contractor, who acquired an undivided one-half interest in Lot 20. At the time of this inspection cetain soil tests to ascertain the extent of slippage or cracking were being made on the hillside to the east of adjacent lots; a drill rig, varying in height from 6 to 12 feet, was used in connection with these tests, and at least a part of the above activities was visible from Lot 20. An escrow was opened on or about April 26, 1962, and in July of 1962, upon closing of the escrow, plaintiff made a down payment of $5,000 and consummated the purchase by giving Milliron a trust deed for $21,300, the balance of the agreed price.

Thereafter plaintiff applied to the City for a permit to build on the subject lot; it was refused, as stipulated between the parties at the outset of trial, "until plaintiff completed certain work on the property." (The court eventually found that "due to the location of Lot 20 on a hillside [the City] would not issue a building permit until plaintiff had completed precautionary stabilizing earthwork.") Plaintiff then consulted the engineering firm of Dames and Moore; three alternative remedies were suggested by Mr. Smoots of that firm, each aggregating $20,000. Plaintiff declined to undertake this expense and commenced the instant litigation in July of 1963. No payments were made on the secured note, and the trust deed was foreclosed by private sale in June of 1965.

The final background fact was stipulated: "Plaintiff's agent inquired of agents for the seller (Lakeridge) whether [Lot 20] was proper and suitable for construction of a dwelling. He was advised that the lot was a proper one for such purpose."

The trial court found that the sum of $26,300, the agreed price, was the reasonable value of the property in suit; that

the representations of suitability for the construction of a dwelling thereon were true, and that no representation of any agent of defendant Lakeridge was made to deceive plaintiff; that plaintiff expended the sum of $2,500 in developing plans for the construction of a residence upon the parcel and therefor employed the firm of Dames and Moore to prepare a report concerning the ''precautionary stabilizing earthwork'' required, as mentioned earlier, as a condition for the issuance of a building permit; and that said requirement of earthwork was not material to the contract between plaintiff and defendant Lakeridge and resulted only in increased expense in the construction of the residence planned. A finding was also made that Milliron was not a party to the agreement as agent or otherwise and was not responsible for any obligation of Lakeridge with respect to the subject transaction.

The evidence being in conflict or susceptible of conflicting inferences, plaintiff's contentions are governed by settled rules which have heretofore been stated many times: The appellate court must accept as established all facts and inferences favorable to the party prevailing below which find substantial support in the evidence (*Ashburn* v. *Miller*, 161 Cal.App.2d 71, 74 [326 P.2d 229]) ; and when it is urged that the evidence is insufficient to support the findings, such contention requires a demonstration by the party so asserting that there is no substantial evidence to support the findings challenged. (*Nichols* v. *Mitchell*, 32 Cal.2d 598, 600 [197 P.2d 550].) For reasons now to be discussed, we cannot say that a reversal of the judgment is warranted.

Plaintiff's case against defendants sounded in fraud. He accordingly had to prove that a material representation was made; that it was false; that defendants knew it to be untrue or did not have sufficient knowledge to warrant a belief that it was true; that it was made with intent to induce plaintiff to act in reliance thereon; that plaintiff reasonably believed it to be true; that it was relied on by plaintiff, and that he suffered damage thereby. (*Hobart* v. *Hobart Estate Co.*, 26 Cal.2d 412, 422 [159 P.2d 958].) Plaintiff's claim is not limited to a representation negligently made, that is, an assertion as a fact of that which is not true, by one who has no reasonable ground for believing it to be true (*Gagne* v. *Bertran*, 43 Cal.2d 481, 487 [275 P.2d 15]) ; on the contrary, he contends that defendants had actual knowledge of certain geological and other conditions in the immediate area which might have militated against the sale and should have been disclosed to plaintiff

before purchase. According to plaintiff, by personal observation defendant Jones knew as early as 1961, if not earlier, that crackage or slippage had occurred on three adjacent lots (Lots 17, 18 and 19) which resulted in a decision by the owners reached in February of 1962, to build a retaining wall, costing $100,000 along those parcels. Too, prior to such decision, the parties concerned had requested and received a report from the firm of Dames and Moore with the recommendations therein contained. Upon the trial, Mr. Smoots of that firm testified that the above conditions on Lots 17, 18 and 19 also existed on Lot 20; stating that a landslide could occur, he testified that "it's a potential in that there is something about the property which would make it susceptible or likely to slide."

But there was contrary evidence, by inference and otherwise. As mentioned earlier, the claimed misrepresentation was the suitability of the lot for construction of a dwelling thereon; and there was no apparent question of its suitability until a building permit was sought and denied. The only ground for the denial of a building permit, as further shown, was the completion of certain work on the property. The nature of this work has never been specified, and the record is devoid of any evidence that the recommendations discussed by Smoots would have also been required by the City. Too, plaintiff admitted that he furnished no foundation plans when he applied for the permit, and the court was thus empowered to infer that the permit might have been denied for that reason. "Suitable" has been held to be synonymous with "fit" (*Herbold* v. *Hardy,* 104 Cal.App.2d 417, 421 [231 P.2d 910]), and with respect to the word "fit" it has been said that "there are few words in our language that have a broader significance. . . ." (*Meyer* v. *Board of Public Works,* 51 Cal.App. 2d 456, 467 [125 P.2d 50].) Given the considerable latitude implicit in the above decisions, it cannot be said that the trial court under all the circumstances here presented improperly found that the challenged representation was true.

Even if it be assumed, arguendo, that plaintiff met his burden of establishing the falsity of the statement in suit, there was more than a sufficient showing that the representation was not made with the intent to deceive. Defendant Jones stated that she saw signs of crackage on Lots 17 and 18; upon inspecting Lots 19 and 20, however, she found no such condition. Nor was the Dames and Moore report available to defendants at the time here material. Thus, although the escrow with plaintiff was opened on April 26 (1962), no re-

port was received from that firm until at least June 27, a date subsequent to the agreement with plaintiff; and from this fact it is fairly inferable that defendants were without knowledge of the cost of suggested improvements until negotiations with plaintiff for purchase of Lot 20 had been concluded.

If it be further assumed that the representation was false and made with intent to deceive, it still became necessary for plaintiff to prove reliance upon the alleged misrepresentation. Plaintiff was a real estate developer and admittedly owned hillside property; his partner, Puskin, was a licensed contractor. Both inspected the property, and nobody interferred with such inspection. As noted earlier, soil testing equipment had been installed on adjacent lots, and it was for the trial court to determine whether plaintiff actually saw this equipment when he was making his inspection of Lot 20. In such a situation the following rule becomes applicable: "If it fairly appears from the evidence that the buyer undertook to investigate for himself the matters as to which representations had been made, he cannot be allowed to later claim that he acted upon the representations, even though he voluntarily abandoned his investigation before it was completed." (*Carpenter* v. *Hamilton,* 18 Cal.App.2d 69, 71-72 [62 P.2d 1397].)

The next finding challenged declares that the requirement of earthwork was not material to the contract and did not amount to a mistake of fact or of law; however, although the burden was his to do so (*Nichols* v. *Mitchell, supra,* 32 Cal.2d 598, 600), it is not pointed out in what respect such finding is lacking in substantial support, and we do not consider contentions thus presented. Furthermore, the mistake (if any) related to the relief obtainable by rescission (Civ. Code, §§ 1577, 1578), and the trial court found that by the filing of his complaint plaintiff elected to stand upon the contract in suit and waived any right he might otherwise have had to rescind. The above ruling having been discussed in the briefs, under the facts at bar we conclude that it was correctly rendered. It is true, as urged by plaintiff, that a claim for damages is not inconsistent with a claim for relief based on rescission (Civ. Code, § 1693); but section 1691 of the same code provides in pertinent part that "Subject to Section 1693, to effect a rescission a party to the contract must, promptly upon discovering the facts which entitle him to rescind . . . (a) Give notice of rescission to the party as to whom he rescinds; and (b) Restore to the other party everything of value which he has received. . . ." In the present case plain-

tiff filed his action in July of 1963; but the record reflects no mention of rescission until the pretrial statement in February of 1966 although long prior thereto he clearly became aware of facts allegedly calling for rescission.

The finding as to the reasonable value of the lot is likewise supportable, if only by the testimony in that regard by defendant Jones who was competent to give such opinion.

The only remaining finding criticized relates to the non-responsibility of Milliron and his estate for any obligation of the defunct Lakeridge company. There is nothing before us to show that Lakeridge, as owner of the subject parcel, was an agent of Milliron; nor is there anything in the Certificate of Winding Up and Dissolution, when Lakeridge was dissolved, which indicates that Milliron was assuming any liability of Lakeridge to plaintiff. The above certificate was verified on October 26, 1962, and plaintiff's action was not filed until July of 1963. Finally, ''The intent to make the obligation inure to the benefit of a third party must be clearly manifested by the contracting parties in order for the beneficiary to maintain an action.'' (*Arata* v. *Bank of America,* 223 Cal.App.2d 199, 205 [35 Cal.Rptr. 703].)

The judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.