155 F.3d 1097
 98 Cal. Daily Op. Serv. 7075, 98 Daily Journal
D.A.R. 9807
CITICORP REAL ESTATE, INC., a Delaware Corporation, Plaintiff-Appellee,
v.
Helen SMITH, an individual; J.A.H., LTD, a California
limited partnership; Stewart Title Company of San
Diego, a California corporation,
Defendants-Appellants.
CITICORP REAL ESTATE, INC., a Delaware Corporation, Plaintiff-Appellee,
v.
Helen M. SMITH, an individual; M.H.H., a California general
partnership, Defendants-Appellants.
CITICORP REAL ESTATE, INC., a Delaware Corporation,
Plaintiff-counter-defendant-Appellee,
v.
Helen SMITH, an individual, Defendant-counter-claimant-Appellant,
and
J.A.H., Ltd., a California limited partnership, Defendant-Appellant,
and
Stewart Title Company of San Diego, a California
corporation, Defendants.
CITICORP REAL ESTATE, INC., a Delaware Corporation, Plaintiff-Appellee,
v.
M. Helen SMITH; M.H.H., a California general partnership,
Defendants-Appellants.
 Nos. 93-56640, 94-55070, 97-56338, 97-56358.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted April 8, 1998.
Decided Sept. 10, 1998.
 
 R. Keith McKellogg, Circuit, McKellogg, Kinney & Ross, La Jolla, CA, for defendants-appellants.
 Frank T. Pepler and Julie B. Landau, Steefel, Levitt & Weiss, San Francisco, CA, for plaintiff-appellee.
 Appeals from the United States District Court for the Southern District of California; William B. Enright, District Judge, Presiding. D.C. Nos. CV 91-01757-WBE, CV 91-1754-GT.
 Before: SCHROEDER, PREGERSON, and KLEINFELD,* Circuit Judges.
 PREGERSON, Circuit Judge:
 
 
 1
 * This consolidated appeal arises out a judicial foreclosure action. The district court granted summary judgment in Plaintiff-Appellee Citicorp Real Estate, Inc.'s ("Citicorp") favor, ordered the property securing the loans to be sold at a judicial foreclosure sale, and entered deficiency judgments against the defendants Helen Smith, M.H.H., and J.A.H. ("Defendants").
 
 
 2
 On appeal, Defendants argue that the district court erred by: (1) entering summary judgment in Citicorp's favor; (2) denying leave to amend their counterclaims to seek the remedy of rescission; (3) overcalculating the deficiency judgments-by determining the fair value of the property based on what a buyer would be willing to pay in cash for the property and by failing to apply the federal interest rate in calculating the post-judgment interest. Defendants seek reversal of the district court's grant of summary judgment in favor of Citicorp. Alternatively, Defendants ask the court to recalculate the deficiency judgments by assessing the fair value of the property at $12.2 million, not $7.3 million, and remanding with instructions to apply the federal interest rate in calculating the post-judgment interest. Citicorp argues that this court lacks jurisdiction to review the district court's grant of summary judgment in its favor. Citicorp requests the court to affirm the district court.
 
 
 3
 We affirm the district court's September 30 and December 8, 1993 orders granting summary judgment in Plaintiff-Appellee Citicorp Real Estate, Inc.'s ("Citicorp") favor. We also affirm the district court's August 2, 1997 order entering a deficiency judgment against Defendant-Appellants Helen Smith and M.H.H. and the court's August 27, 1997 order entering a deficiency judgment against Defendants-Appellants Smith and J.A.H.
 
 II
 A. Jurisdiction
 1. Appellate Jurisdiction
 
 4
 As a threshold matter, Citicorp contends that this court lacks appellate jurisdiction over the district court's December 8, 1993 and September 30, 1993 judgment orders ("foreclosure judgments") granting Citicorp's motion for summary judgment. Citicorp argues that the foreclosure judgments are not final within the meaning of 28 U.S.C. § 1291 because they leave the actual amount of the deficiency judgment to be determined at a fair value hearing following the judicial foreclosure sales.
 
 
 5
 Section 1291 of Title 28, U.S.C., gives courts of appeal jurisdiction over "all final decisions" of district courts, except where a direct review may be had by the Supreme Court. 28 U.S.C. § 1291. "The requirement of finality precludes consideration of decisions that are subject to revision, and even of 'fully consummated decisions [that] are steps towards final judgment in which they will merge.' " Behrens v. Pelletier, 516 U.S. 299, 313, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996) (citing Cohen v. Beneficial Industrial Loan Corporation, 337 U.S. 541, 546, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949)). The purpose of section 1291 is to "disallow appeal from any decision which is tentative, informal or incomplete." Cohen, 337 U.S. at 546, 69 S.Ct. 1221.
 
 
 6
 The foreclosure judgments at issue in this appeal conclusively establish Smith's liability for the defaulted loans (including a quantified amount of principal, interest, and reasonable attorney's fees). Cf. Burlington, C.R. & N. Ry. v. Simmons, 123 U.S. 52, 54, 8 S.Ct. 58, 31 L.Ed. 73 (1887) (holding that an order establishing the right of the junior mortgagee to redeem the prior mortgage was interlocutory and not appealable because the amount due had not been fixed or the property ordered sold); North Carolina R.R. v. Swasey, 90 U.S. (23 Wall.) 405, 409, 23 L.Ed. 136 (1874) (holding that an order directing a foreclosure sale that fails to specify the amount of an unliquidated claim or identify the property to be sold is not final). The judgments also identify the property to be sold in satisfaction of the debt. As such, the foreclosure judgments conclusively determine the rights of the parties to the litigation. The district court retained jurisdiction for the sole purpose of holding the Defendants personally liable for any deficiency judgment remaining after the judicial foreclosure sales. See id. (concluding that an appeal may be taken from a decree of foreclosure and sale "when the rights of the parties have all been settled and nothing remains to be done by the court but to make the sale and pay out the proceeds."); see also Leadville Coal Co. v. McCreery, 141 U.S. 475, 478, 12 S.Ct. 28, 35 L.Ed. 824 (1891) (holding that where a creditor failed to appeal the order directing the sale of property he was barred from asserting any rights to the property by merely appealing the order confirming the sale). Accordingly, we conclude that the foreclosure judgments, as written, are final decisions appealable within the meaning of 28 U.S.C. § 1291.
 
 2. Subject Matter Jurisdiction
 
 7
 Citicorp filed the underlying action on the basis of diversity jurisdiction, 28 U.S.C. § 1332(a). Citicorp is a Delaware corporation with its principal place of business in New York. The Defendants are all citizens of California. Defendants contend that Citibank, Citicorp's predecessor in interest, was also a citizen of California. Defendants argue that the district court lacked subject matter jurisdiction because Citibank improperly assigned its interest in the loan agreements to Citicorp for the sole purpose of creating diversity jurisdiction.
 
 
 8
 The existence of subject matter jurisdiction is a question of law reviewed de novo. See Ma v. Reno, 114 F.3d 128, 130 (9th Cir.1997); Sahni v. American Diversified Partners, 83 F.3d 1054, 1057 (1996), cert. denied, --- U.S. ----, 117 S.Ct. 765, 136 L.Ed.2d 712 (1997). This court reviews the district court's findings of fact relevant to its determination of subject matter jurisdiction for clear error. H2O Houseboat Vacations Inc. v. Hernandez, 103 F.3d 914, 916 (9th Cir.1996); Wilson v. A.H. Belo Corp., 87 F.3d 393, 396 (9th Cir.1996). The district court's factual findings on all jurisdictional issues must be accepted unless clearly erroneous. Adler v. Federal Republic of Nigeria, 107 F.3d 720, 729 (9th Cir.1997); Wang v. Reno, 81 F.3d 808, 813 (9th Cir.1996).
 
 
 9
 The district court asserted subject matter jurisdiction over this matter on two alternative grounds. First, the district court determined that there was no indication that the assignment from Citibank to Citicorp was made for the purpose of manufacturing jurisdiction.[1] Second, the district court concluded that the argument was meritless because the citizenship of Citibank was diverse from that of Defendants.[2] On appeal, defendants argue that the district court erred by failing to grant their request for a continuance to conduct additional discovery as to the parent-subsidiary relationship between Citibank and Citibank FSB.
 
 
 10
 The decision to grant or deny a continuance is in the sound discretion of the trial court and will not be overturned except upon a showing of clear abuse of discretion. See Columbia Pictures Television v. Krypton Broadcasting of Birmingham, Inc., 106 F.3d 284, 296 (9th Cir.), cert. granted by, --- U.S. ----, 118 S.Ct. 30, 138 L.Ed.2d 1059 (1997); Woods v. Saturn Distribution Corp., 78 F.3d 424, 427 (9th Cir.1996), cert. dismissed, 518 U.S. 1051, 117 S.Ct. 30, 135 L.Ed.2d 1123 (1996). The district court's decision not to permit additional discovery pursuant to Federal Rule of Civil Procedure 56(f) is reviewed for an abuse of discretion. See Nidds v. Schindler Elevator Corp., 113 F.3d 912, 920 (9th Cir.1996), cert. denied by, --- U.S. ----, 118 S.Ct. 369, 139 L.Ed.2d 287 (1997); Maljack Productions, Inc. v. GoodTimes Home Video Corp., 81 F.3d 881, 887 (9th Cir.1996). Defendants offer no reasoned basis for needing additional time to investigate the parent-subsidiary relationship between Citibank and Citibank FSB. See Qualls v. Blue Cross of Cal., Inc., 22 F.3d 839, 844 (9th Cir.1994) (holding that "[w]e will only find that the district court abused its discretion if the movant diligently pursued its previous discovery opportunities, and if the movant can show how allowing additional discovery would have precluded summary judgment."). Therefore, we conclude that the district court did not abuse its discretion in denying Defendants' request for a continuance. Accordingly, the district court properly exercised subject matter jurisdiction over this action.
 
 B. Summary Judgment
 
 11
 Defendants argue that the district court erred in granting summary judgment in Citicorp's favor because Citicorp's misrepresentation regarding the availability of the $6 million unsecured line of credit entitled Smith to rescind the loan agreements. In pleading the misrepresentation counterclaim, Defendants sought only damages-not rescission. Defendants noticed a motion for September 7, 1993 for leave to amend the misrepresentation counterclaim to seek the additional remedy of rescission. Defendants moved to continue Citicorp's summary judgment motion until after the district court ruled on Defendants' motion for leave to amend. The district court denied the request for a continuance and entered summary judgment in Citicorp's favor. Thereafter, the district court denied Defendants' motion for leave to amend as moot, in light of its grant of summary judgment in Citicorp's favor.
 
 
 12
 A grant of summary judgment is reviewed de novo. See Covey v. Hollydale Mobilehome Estates, 116 F.3d 830, 834 (9th Cir.1997); Bagdadi v. Nazar, 84 F.3d 1194, 1197 (9th Cir.1996). The appellate court's review is governed by the same standard used by the trial court under Federal Rule of Civil Procedure 56(c). See Ghotra v. Bandila Shipping, Inc., 113 F.3d 1050, 1054 (9th Cir.1997), cert. denied by, --- U.S. ----, 118 S.Ct. 1034, 140 L.Ed.2d 101 (1998); Parker v. United States, 110 F.3d 678, 681 (9th Cir.1997). The appellate court must determine, viewing the evidence in the light most favorable to the non-moving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. See Covey, 116 F.3d at 834. The court must not weigh the evidence or determine the truth of the matter but only determine whether there is a genuine issue for trial. See id. When a mixed question of fact and law involves undisputed underlying facts, summary judgment may be appropriate. See Han v. Mobil Oil Corp., 73 F.3d 872, 874 (9th Cir.1995). Summary judgment is not proper, however, if material factual issues exist for trial. See Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir.1995), cert. denied by, 516 U.S. 1171, 116 S.Ct. 1261, 134 L.Ed.2d 209 (1996). A district court's decision to deny leave to amend, after a responsive pleading, is reviewed for abuse of discretion. See Schlacter-Jones v. General Tel. of Cal., 936 F.2d 435, 443 (9th Cir.1991).
 
 
 13
 Under California law, a party to a contract has grounds to rescind the contract if the consent of the party seeking rescission was obtained through fraud. See Cal. Civ.Code § 1689(b)(1) (West 1985, Supp.1998). However, "in order to escape from its obligation the aggrieved party must rescind by prompt notice and offer to restore the consideration received, if any." 1 B.E. Witkin, Summary of California Law, Contracts § 403 (9th ed.1987, Supp.1997); Cal. Civ.Code § 1691(a) (West 1985, Supp.1998).[3] A party who delays in seeking the remedy of rescission may forfeit the right to rescind where the delay substantially prejudiced the other party.[4]
 
 
 14
 The district court did not err in granting summary judgment in Citicorp's favor or in denying leave to amend. When Citicorp filed its summary judgment motion, Defendants sought only damages for the alleged misrepresentation. As such, Defendants had not yet given notice of an intent to rescind as required by section 1691. Smith knew or should have known of the misrepresentation as early as August 1990-the date when the $6 million unsecured line of credit was cancelled.[5] Notwithstanding this fact, Defendants did not seek leave to amend their counterclaims to seek the additional remedy of rescission until September 1993-one year and nine months after Citicorp filed the underlying actions, five months after the arbitration award was entered, and three months after Citicorp filed for summary judgment. Thus, Defendants failed to give prompt notice of their intent to seek rescission, as required by section 1691. See Doctor v. Lakeridge Const. Co., 252 Cal.App.2d 715, 60 Cal.Rptr. 824, 828 (1967) (holding that plaintiff had not established a claim for rescission because the alleged representations were true and that, in any case, the plaintiff waived his right to rescind because he delayed three years after the action had been filed to notify defendant of his intent to rescind). Defendants offer no excuse for their delay.
 
 
 15
 Defendants' contention that they were not obligated to notify Citicorp of their intent to rescind until after the arbitrators' award was entered in April 1993 lacks merit. The arbitrators' award did not uncover the facts necessary to place Defendants on notice of their right to rescind. The facts supporting a claim of rescission were known to the Defendants before they answered and counterclaimed against Citicorp's complaint. Thus, the period within which Defendants had to exercise the right to rescind began on the date they realized that the $6 million unsecured credit line was cancelled, no later than February 1991. See Cal. Civ.Code § 1691 (West 1985, Supp.1998) (providing that whether a party delayed in giving notice of an intent to rescind is measured against the time when the party seeking rescission "discovered the facts which entitled him to rescind."). As a result of Defendants' delay in giving notice of an intent to rescind, Citicorp suffered substantial prejudice-by weathering several months of arbitration and nearly two years of litigation.
 
 
 16
 Moreover, the binding arbitration award that was entered in Citibank's favor established conclusively that Smith loses on her claims against the bank. The district court noted that "Smith has stipulated to confirm the arbitration award," and thus the court found that Smith was not entitled to summary judgment on her misrepresentation claim because the arbitrators decided that she suffered no damage. Accordingly, we conclude that the district court did not abuse its discretion in denying Defendants' motion for leave to amend the misrepresentation claim to seek rescission and did not err in granting summary judgment in Citicorp's favor.[6]
 
 C. Fair Value
 
 17
 After granting Citicorp's motion for summary judgment and request for judicial foreclosure,[7] the court retained jurisdiction to enter a deficiency judgment[8] should the proceeds from the sale of the property securing the $8.1 and $8.5 million loan agreements fall short of the debt owed by Smith. On appeal, Defendants argue that the court underestimated the fair value of the properties securing the $8.1 and $8.5 million loan agreements.[9]
 
 
 18
 1. Fair Value is Assessed at the Time of the Foreclosure Sale
 
 
 19
 Defendants argue that the district court erred in assessing the fair value of the property at the time of the foreclosure sale. Defendants contend that valuation should have been assessed at the time the promissory notes were executed.[10] Defendants are incorrect.
 
 
 20
 California Code of Civil Procedure § 726(b) provides that where a defendant is found personally liable for a debt, he may within three months of the foreclosure sale seek an evidentiary hearing to determine the fair value of the property as of the date of the sale. See Cal.Civ.Proc.Code § 726(b) (emphasis added); San Paolo, 62 Cal.App.4th at 1013, 73 Cal.Rptr.2d 272 (defining fair value, within the context of 726(b), "as the fair market value of the real property, as of the date of the foreclosure sale, without any reduction for the adverse impact of the foreclosure sale and the one-year right of redemption that would temporarily lower the market value of the real property."); Rainer Mortg., 163 Cal.App.3d at 367, 209 Cal.Rptr. 294 (holding that fair value is to be construed as the intrinsic value of real property subject to judicial foreclosure, taking into account all factors that affect the underlying worth of the property at the time of the foreclosure sale, without considering the impact of the foreclosure on the proceeding); see also Nelson v. Orosco, 117 Cal.App.3d 73, 79, 172 Cal.Rptr. 457 (1981) (holding that "the legislative intent behind the enactment of Code of Civil Procedure section 726 was that ... 'fair value' was to be determined by all the circumstances attending the property at a foreclosure sale, including the state of its title and merchantability."). The fair value limitation of § 726 is intended to protect the defaulting mortgagor by crediting the borrower "with the intrinsic value of the underlying value of the property." San Paolo, 62 Cal.App.4th at 1025, 73 Cal.Rptr.2d 272.
 
 
 21
 Despite the plain language of § 726, Defendants contend that the lender, Citicorp, should be required to bear the "risk of loss where encumbered property declines in value." Rainer Mortg., 163 Cal.App.3d at 367-68, 209 Cal.Rptr. 294 (stating that "[i]f the lendor overvalues property for purposes of a loan, or misjudges the commercial viability of a real estate project, it is entirely proper that the risk of loss be with the lender."). Defendants offer no authority that would warrant departing from the express language of § 726. Rather, Defendants argue by analogy to California Code of Civil Procedure § 580(b) that the risk of overvaluation should be borne by the lender. Defendants' analogy is misplaced.
 
 
 22
 Section 580(b) exempts a particular class of debtors-persons that default on a purchase money mortgage[11] from foreclosure. One purpose of the anti-deficiency provision of § 580(b) "is to make certain that in the case of 'a purchase money mortgage or deed of trust the security alone can be looked to for recovery of the debt.' " Id. (citing Brown v. Jensen, 41 Cal.2d 193, 198, 259 P.2d 425 (1953)). The trust deeds held by Citicorp as security for the $8.1 and $8.5 million loan agreements are not purchase money mortgages. Defendants offer no support for their argument that the purpose behind the anti-deficiency provisions of § 580(b) are equally applicable to a foreclosure proceeding under § 726. California courts have stated that the protections of § 580(b) are available only to those persons who come within the purpose of the section and the class of debtors it was intended to protect. Roseleaf, 59 Cal.2d at 41, 27 Cal.Rptr. 873, 378 P.2d 97 (holding that § 580(b) "was apparently drafted in contemplation of the standard purchase money mortgage transaction, in which the vendor of real property retains an interest in the land sold to secure payment of part of the purchase price. Variations on the standard are subject to § 580b only if they come within the purpose of that section."). Unlike § 580(b), § 726 permits judicial foreclosures. Provisions 580(b) and 726 are fundamentally distinct. In light of the plain language of § 726 and the inapplicability of § 580, we conclude that the district court did not err in assessing the fair value of the property at the time of the foreclosure sale.
 
 2. Determining Fair Value
 
 23
 The district court determined that the fair value[12] of the properties at the date of the foreclosure sale was the cash or cash-equivalent-sale value of the property, in this case $7.3 million. Defendants contend that the district court should have set the fair value at $12.2 million.[13]
 
 
 24
 A court's determination of fair value is factual in nature. See id.; see also Sammons v. Commissioner of Internal Revenue, 838 F.2d 330, 333 (9th Cir.1988) (concluding that valuation of property is a question of fact involving the consideration of several factors). This court reviews the district court's factual findings under the clearly erroneous standard. See Granite State Ins. v. Smart Modular Technologies, Inc., 76 F.3d 1023, 1028 (9th Cir.1996) (applying the clear and erroneous standard when the parties dispute the relevance of the evidence submitted); see also Anderson v. Bessemer City, 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985) (stating that a finding is clearly erroneous when the reviewing court is left with a definite and firm conviction that a mistake has been committed).
 
 
 25
 Under California law, a court must consider several factors in determining the fair value of a property, including all the "circumstances attending the property." Nelson v. Orosco, 117 Cal.App.3d at 79, 172 Cal.Rptr. 457; Rainer Mortg., 163 Cal.App.3d at 367, 209 Cal.Rptr. 294. The $7.3 million valuation reflects the weighing of several factors, only one of which was the cash or cash-equivalency value of the property.[14] The unique characteristics of the property were considered in assessing potential uses, zoning requirements, development possibilities, and other factors. Moreover, the district court, itself, before receiving the special master's report "had tentatively assigned to the parcels upon its independent review of the original, competing appraisals" an almost identical value.
 
 D. Post-Judgment Interest
 
 26
 The district court calculated pre- and post-judgment interest at the ten percent rate set in the promissory notes ("contract interest rate").[15] Defendants contend that post-judgment interest should have been calculated based on the federal statutory rate of interest,[16] not the contract interest rate.[17]
 
 
 27
 A district court's award of pre- and post-judgment interest is reviewed for abuse of discretion. See Home Savings Bank, F.S.B. v. Gillam, 952 F.2d 1152, 1161 (9th Cir.1991) (citations omitted) (upholding the district court's grant of pre- and post-judgment interest for claims arising under federal law). If, however, review of the award of interest involves statutory interpretation of 28 U.S.C. § 1961, the award is reviewed de novo. See AT&T Co. v. United Computer Systems, Inc., 98 F.3d 1206, 1209 (9th Cir.1996) (concluding that post-judgment interest is calculated at the federal statutory rate commencing on the date an appellate court reverses a judgment of the district court and enters a new money judgment).
 
 
 28
 As a general rule, "[i]n diversity actions, state law determines the rate of prejudgment interest, and postjudgment interest is governed by federal law." Id. (citing Northrop Corp. v. Triad Int'l Marketing, S.A., 842 F.2d 1154, 1155 (9th Cir.1988)). Here, however, "[t]he parties mutually agreed on the interest rate in the promissory note[s], including the rate that would apply in the event that Smith defaulted on the note[s]." At arbitration, Citicorp requested "interest at the default rate set ... in the Note[s] from March 1, 1991 to the date of entry of judgment and, after judgment until collection." The arbitrator's award contained similar language. The arbitrator's award ordered that interest would accrue at the per diem rate specified "until judgment or paid in full." Defendants stipulated to the arbitrator's award. We agree with the district court that the parties contractually waived their right to have post-judgment interest calculated at the federal statutory rate.
 
 
 29
 Contrary to Defendants' assertion, the language of the arbitration award indicates a mutual intent by the parties to have pre- and post-judgment interest calculated at the contract interest rate.[18] This intent is also embodied in the language of the promissory notes, which adopts the same contract interest rate. Defendants' final argument that the stipulated rate of interest remains in effect, until superseded by judgment, is similarly unavailing. See Cal. Civ.Code § 3289(a) (providing that "[a]ny legal rate of interest stipulated by a contract remains chargeable after a breach thereof, as before, until the contract is superseded by a verdict or other new obligation."). Here, the parties specifically agreed that the contract rate of interest would be applied even after judgment was entered. Thus, § 3289 is inapplicable. Accordingly, we affirm the district court's grant of post-judgment interest based on the mutually agreed upon contract rate set forth in the arbitration award and the promissory notes.
 
 III
 
 30
 For the foregoing reasons, we exercise jurisdiction over this action and affirm the foreclosure judgments and the deficiency judgments as calculated by the district court.
 
 
 31
 AFFIRMED.
 
 
 
 *
 Judge Kleinfeld has read the briefs and listened to a tape recording of oral argument
 
 
 [1]
 Citicorp's counsel Richard A. Kramer submitted a declaration explaining that the assignment from Citibank to Citicorp was prompted by business and regulatory concerns, not for the purpose of manufacturing jurisdiction
 
 
 [2]
 Defendants argued before the district court that Smith's account was located in San Diego, California at Citicorp Savings, a branch office of Citibank. Citicorp refuted this assertion with the declaration of Richard Boden, Branch Manager at Citibank Federal Savings Bank ("Citibank FSB"). Boden declared under penalty of perjury that Smith's account was initially opened at Citicorp Savings, a California state-chartered savings and loan association. In April 1990, Citicorp Savings changed to Citibank FSB and converted its operations to become a federally chartered savings bank licensed to conduct business under federal and California state law. Boden further declared that "[a]t no time has the office of Citicorp Savings prior to April 1990, and Citibank FSB, after that date, been a branch office of Citibank, N.A."
 
 
 [3]
 Cal. Civ.Code § 1691 provides, in relevant part, as follows:
 Subject to Section 1693, to effect a rescission a party to the contract must, promptly upon discovering the facts which entitle him to rescind if he is free from duress, menace, undue influence or disability and is aware of his right to rescind:
 (a) Give notice of rescission to the party as to whom he rescinds; and
 (b) Restore to the other party everything of value which he has received from him under the contract or offer to restore the same upon condition that the other party do likewise, unless the latter is unable or positively refuses to do so.
 When notice of rescission has not otherwise been given or an offer to restore the benefits received under the contract has not otherwise been made, the service of a pleading in an action or proceeding that seeks relief based on rescission shall be deemed to be such notice or offer or both.
 
 
 [4]
 California Civil Code § 1693 provides:
 When relief based upon rescission is claimed in an action or proceeding, such relief shall not be denied because of delay in giving notice of rescission unless such delay has been substantially prejudicial to the other party.
 Cal. Civ.Code § 1693 (West 1985, Supp.1998) (emphasis added).
 
 
 [5]
 Smith claims that she did not realize that the $6 million unsecured line of credit had been cancelled until February of 1991 when she unsuccessfully attempted to draw funds from the account
 
 
 [6]
 Defendants also argue that the district court abused its discretion in denying leave to amend its wrongful attachment claim to assert rescission. Defendants contend that Citicorp failed to submit rebuttal evidence to Smith's declaration as to wrongful attachment. Defendants, however, offer no explanation as to how this claim bears upon the issue of rescission. In any case, as discussed previously, Citicorp suffered substantial prejudice as a result of Defendants' delay in giving notice of an intent to rescind. Thus, we also conclude that the district court did not err in denying leave to amend the wrongful attachment counterclaim to seek rescission
 
 
 [7]
 Under California law, foreclosure is the only form of action available for the recovery of any debt or the enforcement of any right secured by a mortgage or deed of trust. Cal. Civ. Pro.Code §§ 580a, 580b, 725a, 726a (West 1985, Supp.1998). Two forms of foreclosure exist-non-judicial foreclosure and judicial foreclosure. Non-judicial foreclosure is a process where property that secures a defaulted obligation is sold by a trustee pursuant to power of sale contained in a deed of trust, without recourse to the courts. 3 Witkin, Summary of California Law, Security Transactions in Real Property § 129 (9th ed.1987, Supp.1997). After exercise of a power of sale, "the debtor has no statutory right of redemption and the creditor is prohibited from recovering a deficiency judgment." Id. Judicial foreclosure is a process where an action for foreclosure is filed with a court, the court determines the rights of the parties, and whether the lender is entitled to any deficiency judgment should the proceeds of a court-ordered foreclosure sale be insufficient to discharge the secured obligation, if and when a foreclosure sale is ordered. Id. §§ 111, 124. In a judicial foreclosure proceeding, if a deficiency judgment is entered under Cal.Civ.Proc.Code § 726 the real property may be sold subject to the right of redemption. Cal.Civ.Proc.Code § 729.010 (West 1985, Supp.1998). "The redemption period from a foreclosure sale under this chapter ends: (a) three months after the date of sale if the proceeds of the sale are sufficient to satisfy the secured indebtedness with interest and costs of action and of sale; (b) One year after the date of sale if the proceeds of the sale are not sufficient to satisfy the secured indebtedness with interest and costs of action and of sale." Cal.Civ.Proc.Code § 729.030 (West 1985, Supp.1998)
 Here, the foreclosure sale of the two parcels of property was completed on September 4, 1996. The properties sold for $6,002,000. Defendants reacquired the properties after they timely filed certificates of redemption on both parcels (the certificates of redemption were filed on August 4, 1997 for the parcel in case No. CV 91-1754 and September 4, 1997 for the parcel in case No. CV 91-1757).
 
 
 [8]
 A deficiency judgment is a personal judgment against the debtor for the difference between the amount of debt and the proceeds of the foreclosure sale, if the proceeds of the sale are less than the amount of the debt. See Cal.Civ.Proc.Code § 726(a) (West Supp.1998); 3 Witkin, Summary of California Law § 156; see also Coppola v. Superior Court (Singer), 211 Cal.App.3d 848, 865, 259 Cal.Rptr. 811 (1989). A deficiency judgment, however, may not "lie in any event after a sale of real property or an estate for years therein for failure of the purchaser to complete his or her contract of sale, or under a deed of trust or mortgage given to the vendor to secure payment of the balance of the purchase price of that real property or estate for years therein, or under a deed of trust or mortgage on a dwelling for all or part of the purchase price of that dwelling occupied, entirely, or in part, by the purchaser." Cal.Civ.Proc.Code § 580(b) (West 1998). Here, the loans at issue fall under § 726(a), not § 580(b). Thus, there is no statutory bar to the entry of a deficiency judgment against Defendants
 
 
 [9]
 Under California law, the amount of a deficiency judgment is determined by the difference between the amount of the debt outstanding and the "fair" market value of the property at the time of the sale. See Roseleaf Corp. v. Chierighino, 59 Cal.2d 35, 39, 27 Cal.Rptr. 873, 378 P.2d 97 (1963) (concluding that under a deficiency proceeding, the amount of the deficiency judgment may not exceed the difference between the amount of indebtedness and the fair market value of the property at the time of the sale); San Paolo U.S. Holding Co., Inc. v. 816 South Figueroa Co., 62 Cal.App.4th 1010, 1013, 73 Cal.Rptr.2d 272 (1998) (holding that "[t]he measure of the deficiency will be the amount by which the indebtedness exceeds the 'fair value' of the real property."). Under California law, the market value of a property is only one factor a court should consider in determining the property's fair value. See Rainer Mortg. v. Silverwood, Ltd., 163 Cal.App.3d 359, 367, 209 Cal.Rptr. 294. In a foreclosure proceeding, parties may submit evidence of the "fair value" of the property securing the debt at the time of the sale. See 3 Witkin, Summary of California Law § 158 (9th ed. Supp.1997)
 
 
 [10]
 At the time the promissory notes were executed, the combined value of the property was appraised at $33,750,000. Defendants argue that the difference in valuation from the time the promissory notes were executed ($33.75 million) and the date of foreclosure resulted from Citicorp's overvaluing the property at the time the loan agreements were executed
 
 
 [11]
 A purchase money mortgage is "a mortgage given to the seller of land to secure payment of a portion of the purchase price." Black's Law Dictionary 1011 (6th ed.1990)
 
 
 [12]
 The two parcels of property sold for $6,002,000. Under normal conditions, the fair or intrinsic value of a property will coincide "with its fair market value; the value a willing purchaser will pay to a willing seller in an open market. This correlation is not fixed, however, and market value is only one factor the court should consider when determining fair value." Rainer Mortg., 163 Cal.App.3d at 366-67, 209 Cal.Rptr. 294 (citations omitted). Fair value "is the intrinsic value of real property subject to judicial foreclosure, taking into consideration all the circumstances affecting the underlying worth of the property at the time of the sale, without consideration of the impact of foreclosure proceedings on this value." Id. at 367, 209 Cal.Rptr. 294
 
 
 [13]
 The Special Master recommended two alternative methods for calculating the fair value of the property. One option was to set the value of the property at $7.3 million. This method of valuation was based on the cash or cash-equivalency value of the property. A fair value determination based on the cash or cash-equivalency value of a property sets the value of the property to be sold according to what a buyer would pay in cash for the property, not what a buyer might be able to finance through the seller, or other financing option. The alternative option was to set the fair value at $12.2 million. This method of valuation encompassed the alternative financing options normally available in the real estate market for this type of parcel
 
 
 [14]
 For example, the special master arrived at the fair value of $7.3 million by:
 (1) Using the highest price (rather than the most probable price) the property would bring between a willing buyer and a willing seller;
 (2) Considering the value of a typical, cash-equivalent transaction (rather than special financing);
 (3) Considering San Diego's slightly depressed market in September 1996 as "not completely normal";
 (4) Considering the unique nature of the property in that most of the surrounding area was already developed;
 (5) Concluding that the highest and best use was retail because despite geological and zoning problems the city would grant variances to allow the development of a project that would generate sales tax revenues;
 (6) Concluding that if the property could not be developed for retail purposes a viable alternative would be to use the property as a scientific-research center; and
 (7) Offering other methods of financing the purchase of the property (a fair value of $12.2 million), if the district court disagreed with the special master's determination of the cash equivalent measure of $7.3 million.
 
 
 [15]
 California Civil Code § 3289(b) provides, in relevant part:
 If a contract entered into after January 1, 1986, does not stipulate to a legal rate of interest, the obligation shall bear interest at a rate of 10 percent per annum after breach.
 
 
 [16]
 The method of calculating the federal statutory rate is set forth in 28 U.S.C. § 1961(a) which provides:
 [s]uch interest shall be calculated from the date of entry of the judgment, at a rate equal to the coupon issue yield equivalent (as determined by the Secretary of the Treasury) of the average accepted auction price for the last auction of fifty-two week United States Treasury bills settled immediately prior to the date of judgment.
 
 
 [17]
 Defendants do not dispute the district court's use of the contract interest rate in determining pre-judgment interest
 
 
 [18]
 Defendants contend that the language "until judgment or paid in full" contained in the arbitrators' award constituted an agreement to apply the contract interest rate until entry of judgment or payment in full, whichever occurs first. Defendants then argue that since the foreclosure judgments were entered into before the debt was paid, the agreement to apply the contractual interest rate lapsed when the foreclosure judgments were entered-and the federal statutory rate automatically kicked in from the day after the foreclosure judgments were entered until the debt was paid. As did the district court, we reject this tortured interpretation of the clause "until judgment or paid in full."