**Daniel R. WALSH, Plaintiff—Appellant,**

v.

**William Cody KELLY, deceased; Patrick L. Kelly; Karen Lucille Kelly, as personal representatives of William Cody Kelly; and William Cody Kelly Trust dated December 12, 1962, Defendants—Appellees.**

**Daniel R. Walsh, Plaintiff—Appellee,**

v.

**William Cody Kelly, deceased; Patrick L. Kelly; Karen Lucille Kelly, as personal representatives of William Cody Kelly; and William Cody Kelly Trust dated December 12, 1962, Defendants—Appellants.**

No. 00–16737, 00–16840.

D.C. No. CV–94–00466–ECR.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 4, 2001.

Decided Jan. 24, 2002.

Before BRIGHT,* B. FLETCHER, and FISHER, Circuit Judges.

MEMORANDUM **

The main issue in this case is the amount of the contingent fee due attorney Daniel Walsh. *See Walsh v. Kelly,* No. CV–N–94–466, Transcript of Decision by the Court (D.Nev. Apr. 21, 2000). Walsh's fee is fifteen percent of the value of certain

---

\* The Honorable Myron H. Bright, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

\*\* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

real estate lots after the deduction of expenses. The value of the lots is to be determined as of November 1, 1991, the date on which Walsh's services were completed. We review the district court's factual determination of the value of the lots for clear error. *Citicorp Real Estate, Inc. v. Smith,* 155 F.3d 1097, 1106–07 (9th Cir. 1998). Because the parties are familiar with the factual and procedural background, we do not detail it here.

The district court rejected as unreliable the comparable market data provided by experts from both parties because the unique lots could not be compared to other properties without substantial, subjective adjustments. Instead, the district court applied an appreciation method of valuation. The district court took the relatively recent sales of the lots in question and estimated what they were worth in 1991, assuming a steady 12% appreciation rate. Although the district court made a conscientious effort to ascertain the value of these difficult-to-value, unique lots, we are convinced, based on the record as a whole, that the appreciation method was unreliable and significantly undervalued the properties.

The 12% appreciation figure was based on the testimony of Kelly's expert appraiser who analyzed the appreciation of residential homes in the Lake Tahoe Basin, residential homes of two large Nevada counties, and six unidentified vacant lots, to arrive at a figure that would confirm his comparable market data. Since the district court found the lots in question to be incomparable to other properties in the area, it is unlikely that the appreciation rate of the lots would be comparable. The district court acknowledged that the 12% rate was likely too high and attempted to adjust for this inaccuracy by not compounding the rate. However, nothing in the record showed that the difference between compounding and not compounding would be sufficient to rectify the error in the rate.

The district court also recognized the need to adjust for the difference in value caused by the Tahoe Regional Planning Agency restrictions, which applied to the lots when they were sold but did not apply in 1991. To this end, the district court equated the value of freedom from the building restrictions to two years' worth of appreciation. Therefore, it adjusted the sales prices upward by 24%. However, there was no evidentiary basis whatsoever for concluding that a 24% upward adjustment would reflect the true amount that a buyer would have paid to have the restrictions lifted. We conclude that the appreciation method used by the district court was totally lacking support in the record and was, therefore, clearly erroneous.

We conclude a more reliable basis for valuing the property was available to the district court. Walsh presented evidence that in 1991 Kelly valued the four hilltop lots at a minimum of $3,000,000 and the lower three lots at $1,050,000, for a total of $4,050,000. The district court noted that Kelly's asking prices may have been slightly inflated, but it found that Kelly was experienced in property development and was serious about selling the lots. Indeed, the district court found that Kelly's valuations "had to be in the ballpark or there would be no chance at all to sell them." Nonetheless, the district court's appreciation method attributed a value of only $1,500,000 to the four hilltop lots and $669,869 to the lower three lots, well outside the "ballpark." This stark contrast underscores the unreliability of the appreciation method in this case.

The accuracy of Kelly's valuations was supported by the testimony of Steven Cress. Cress testified that he was prepared to purchase the four hilltop lots in

1991 for $3,000,000. It was only when Kelly discovered Cress's intended use of the property and increased his asking price to $4,000,000 that Cress decided not to proceed with the purchase.[1] The existence of a buyer willing to purchase at Kelly's asking price in an arms-length transaction demonstrates that Kelly's valuation fairly represented the true value of these lots in 1991. On remand, the district court should compute Walsh's fee based on Kelly's $4,050,000 valuation of the seven lots.

The parties agree that the district court also erred in twice deducting a $96,000 advance payment made to Walsh. That payment of $96,000 is to be deducted as a fee advance, not as a litigation expense. This correction decreases the litigation expenses by $96,000 to equal $1,037,250. Based on these changes, Walsh's fee should be calculated as follows: $4,050,000 less $1,037,250 in litigation expenses, or $3,012,750, times fifteen percent, or $451,912.50, from which the $96,000 advance must be deducted. Thus, the amount of attorney's fees owed to Walsh is $355,912.50.

The district court properly awarded Walsh prejudgment interest. The amount of prejudgment interest should be adjusted to account for the increase in the contingent fee award.

We REVERSE the district court and direct that on remand the award be increased from $66,992 to $355,912.50 together with prejudgment interest calculated on the increased award from November 1, 1991, to the date of the initial entry of judgment, April 21, 2000.

---

1. The district court did not find that Cress lacked credibility. In fact, the district court relied on Cress's testimony to reject the comparable market approach.