**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| PARAMJEET S. MALHOTRA and SUNITA MALHOTRA, a marital community, *Plaintiffs-Appellants*, <br><br> v. <br><br> ROBERT D. STEINBERG; JAMES W. GRACE; DAVID RINNING; STEINBERG & ASSOCIATES LLC; JOHN L. SCOTT, INC.; RE/MAX EASTSIDE BROKERS, INC.; WELLES RINNING, *Defendants-Appellees*. | No. 13-35165 <br><br> D.C. No. 2:09-cv-01618-JLR <br><br><br> OPINION |

Appeal from the United States District Court
for the Western District of Washington
James L. Robart, District Judge, Presiding

Argued and Submitted
June 5, 2014—Seattle, Washington

Filed October 29, 2014

Before: Alfred T. Goodwin, M. Margaret McKeown,
and Paul J. Watford, Circuit Judges.

Opinion by Judge Watford

## SUMMARY[*]

### False Claims Act

The panel affirmed the district court's dismissal of a qui tam action brought under the False Claims Act on the basis that the court lacked subject matter jurisdiction because the Act's "public disclosure" bar applied.

The plaintiffs, chapter 11 debtors, alleged that a former bankruptcy trustee presented fraudulent claims for payment to the bankruptcy court, falsely certifying that he had faithfully performed his duties as trustee.

The panel held that alleged kickback scheme transactions were publicly disclosed during a deposition taken by the Office of the United States Trustee, as part of its administrative investigation of the trustee, because the transactions were disclosed to the plaintiffs, who were outsiders to the investigation. In addition, the plaintiffs were not original sources of the kickback scheme allegations because they did not have independent knowledge of this information. Accordingly, the public disclosure bar applied.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Angelo J. Calfo (argued) and Theresa DeMonte, Calfo Harrigan Leyh & Eakes LLP, Seattle, Washington, for Plaintiffs-Appellants.

Kent Michael Fandel (argued) and Daniel J. Oates, Graham & Dunn PC, Seattle, Washington, for Defendants-Appellees.

**OPINION**

WATFORD, Circuit Judge:

Paramjeet and Sunita Malhotra, a married couple, filed this *qui tam* action under the False Claims Act, 31 U.S.C. §§ 3729–3733. The district court held that it lacked subject matter jurisdiction because the Act's "public disclosure" bar applies. We are asked to decide whether a deposition taken by the Office of the United States Trustee triggered the bar and, if so, whether the Malhotras fall within the "original source" exception to the bar.

I

In 2006, the Malhotras sought bankruptcy protection under Chapter 11 after experiencing cash-flow difficulties in their real estate business. The bankruptcy court appointed Robert Steinberg as the trustee to administer the Malhotras' bankruptcy estate. From their very first meeting with Steinberg, the Malhotras suspected he was corrupt. They turned out to be right.

The Malhotras' initial meeting with Steinberg took place at their home shortly after Steinberg had been appointed trustee. He showed up with a real estate agent named James Grace. Steinberg informed the Malhotras that he would be selling their home and other properties (which he oddly referred to as "my properties") immediately and that Grace would be handling the sales. This plan of action struck the Malhotras as highly suspicious. They viewed liquidation of their assets—particularly a sale of their personal residence—as entirely unnecessary to a successful reorganization under Chapter 11. Their suspicions increased when Steinberg filed an involuntary petition against a company owned by the Malhotras, which had the effect of bringing additional properties under Steinberg's control. And they became still more suspicious when Grace referred to Steinberg as his "partner" and mentioned that he and Steinberg had worked together on over 150 cases. These red flags convinced the Malhotras that Steinberg was involved in some kind of scheme whereby he intended to profit personally from their bankruptcy.

Their suspicions aroused, the Malhotras began investigating Steinberg. They reviewed thousands of pages of bankruptcy court and county assessor's office records. Those records revealed that Steinberg, in his capacity as bankruptcy trustee, had employed Grace as a real estate agent to sell bankruptcy estate property in scores of cases. When the Malhotras took a closer look at some of the sales, they discovered that the properties had been sold for what the Malhotras believed was less than fair value. In some instances, presumably to justify the low sales price, Steinberg made representations to the bankruptcy court about the condition of the property that, upon investigation, the Malhotras believed to be untrue. The Malhotras also

discovered what they termed "straw man" transactions—instances in which Steinberg sold bankruptcy estate property at below-market prices to his associates, who then resold the property a short time later for a large profit. These sales led the Malhotras to suspect that Steinberg was receiving payment "on the side" for his role in orchestrating the sales.

The Malhotras shared the fruits of their investigation with the Office of the United States Trustee, the government entity responsible for appointing Steinberg as a bankruptcy trustee. The Trustee's Office thanked the Malhotras for the information and encouraged them to continue investigating Steinberg, which the Malhotras did. They reviewed additional bankruptcy court and county assessor's office records, visited the properties involved, and interviewed witnesses. Those efforts revealed additional suspicious sales involving Steinberg and Grace, and the Malhotras shared this information with the Trustee's Office as well. Much to the Malhotras' frustration, however, the Trustee's Office took no action.

That changed in May 2008, when the Trustee's Office received a letter from one of Steinberg's former employees. The letter stated that Steinberg and an unnamed real estate agent had struck an agreement under which Steinberg received a "referral fee" from the agent in exchange for hiring the agent to sell bankruptcy estate property. The letter prompted the Trustee's Office to launch its own investigation of Steinberg. The Trustee's Office ultimately subpoenaed records from a number of real estate agencies, including Grace's current and former employers, which documented Grace's payment of "referral fees" to Steinberg over many years.

After receiving these documents, the Trustee's Office deposed Grace under Rule 2004 of the Federal Rules of Bankruptcy Procedure. For reasons of administrative convenience, the Trustee's Office noticed Grace's deposition in the Malhotras' bankruptcy case. (At the time, the Malhotras' case was the only one still open in which Steinberg and Grace had worked together while Grace was employed by his then-current firm.) During the deposition, which the Malhotras attended, Grace admitted that Steinberg would hire him as a real estate agent to sell bankruptcy estate property, and in return Grace would pay a percentage of the commissions he earned to Steinberg. The Trustee's Office asked Grace a handful of questions relating to the Malhotras' bankruptcy case, but most of the questioning focused on property sales in other bankruptcy cases.

About a year after the Grace deposition, the Malhotras filed this *qui tam* action against Steinberg, Grace, and others under the False Claims Act. The Act authorizes private parties, known as relators, to bring civil actions in the name of the United States against any person who presents a false or fraudulent claim for payment to the federal government. 31 U.S.C. § 3730(b)(1). The Malhotras' complaint alleges that Steinberg presented fraudulent claims to the bankruptcy court in order to obtain payment of the $60 trustee's fee Steinberg received for each bankruptcy case he administered. Steinberg's claims for payment were fraudulent, the Malhotras allege, because to obtain payment he falsely certified that he had faithfully performed his duties as trustee.

The Malhotras' complaint appears to allege two different theories for why Steinberg's certifications were fraudulent. The first is that he failed to disclose to the bankruptcy court the "referral fees" he received from Grace. The complaint

refers to these payments as the "kickback scheme." The second theory is that Steinberg failed to disclose his role in orchestrating below-market sales to his associates, who then "flipped" the properties a short time later and paid a share of the profits to Steinberg. The complaint refers to these sales as the "straw man transactions." Had Steinberg disclosed either form of misconduct to the court, the complaint suggests, he would not have been paid the $60 trustee's fee for each case.

Defendants moved to dismiss the action for lack of subject matter jurisdiction. They argued that the Malhotras' action is barred by a provision of the False Claims Act known as the public disclosure bar. That provision was amended in 2010, but at the time relevant here it provided:

> No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

31 U.S.C. § 3730(e)(4)(A) (2006) (footnote omitted). The statute defined "original source" as follows:

> For purposes of this paragraph, "original source" means an individual who has direct and independent knowledge of the information on which the allegations are

based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information.

§ 3730(e)(4)(B).

Defendants brought a factual attack on the complaint's allegations. They submitted evidence establishing that the transactions underlying the kickback scheme were disclosed during the Grace deposition. Defendants argued that those transactions were therefore publicly disclosed as part of an administrative investigation conducted by the Trustee's Office, which triggered § 3730(e)(4)(A)'s public disclosure bar and deprived the court of jurisdiction over the Malhotras' action. The Malhotras did not dispute defendants' framing of the issue. They made no attempt to argue that the alleged straw man transactions—which were not disclosed during the Grace deposition—provided an independent basis for their claims.

The district court therefore limited its analysis to whether the Grace deposition constituted a "public disclosure" of the transactions underlying the kickback scheme. It concluded that the Grace deposition constituted such a disclosure under our decision in *Seal 1 v. Seal A*, 255 F.3d 1154 (9th Cir. 2001). The court then turned to the original source analysis. After conducting an evidentiary hearing to resolve disputed factual issues, the court concluded that the Malhotras were not original sources of the information underlying the kickback scheme transactions, because the Malhotras didn't know anything about those transactions until they attended the Grace deposition. Based on these rulings, the court dismissed the action for lack of subject matter jurisdiction.

## II

On appeal, the Malhotras do not challenge the district court's decision to limit its analysis to the kickback scheme transactions. Instead, they contend the district court erred by holding that those transactions were publicly disclosed during the Grace deposition. If they're right on that score, § 3730(e)(4)(A)'s public disclosure bar doesn't apply; the existence of a public disclosure is a threshold condition for application of the bar. *See Wang v. FMC Corp.*, 975 F.2d 1412, 1416 (9th Cir. 1992). If the Grace deposition constitutes a public disclosure, we must then decide whether the Malhotras are original sources of the information under § 3730(e)(4)(B).

## A

We start with the threshold issue. The public disclosure bar is triggered if three things are true: (1) the disclosure at issue occurred through one of the channels specified in the statute; (2) the disclosure was "public"; and (3) the relator's action is "based upon" the allegations or transactions publicly disclosed. § 3730(e)(4)(A).

We agree with the district court that the Grace deposition satisfies the first and third requirements. The Trustee's Office took Grace's deposition as part of an internal investigation into alleged wrongdoing by one of its trustees, and that investigation fits comfortably within the "administrative" investigations mentioned in § 3730(e)(4)(A). *See Seal 1*, 255 F.3d at 1161. The disclosures Grace made during the deposition therefore occurred through one of the channels specified in the statute. The Malhotras don't contest that, during the deposition, Grace disclosed the material

elements of the fraudulent transactions underlying the kickback scheme. *See A-1 Ambulance Serv., Inc. v. California*, 202 F.3d 1238, 1243 (9th Cir. 2000) (holding that "the jurisdictional bar is raised so long as the material elements of the allegedly fraudulent 'transaction' are disclosed"). Nor do the Malhotras contest the district court's ruling that their action is "based upon" those same transactions. We have held that the phrase "based upon" in § 3730(e)(4)(A) means "substantially similar to," not "derived from." *United States ex rel. Meyer v. Horizon Health Corp.*, 565 F.3d 1195, 1199 (9th Cir. 2009); *United States ex rel. Biddle v. Bd. of Trs. of the Leland Stanford Junior Univ.*, 161 F.3d 533, 539–40 (9th Cir. 1998). The kickback scheme transactions alleged in the Malhotras' complaint are substantially similar to the transactions Grace disclosed during his deposition.

What the Malhotras dispute is whether the disclosures Grace made during the deposition were "public." In our view, that issue is controlled by *Seal 1*. There, we construed the word "public" in § 3730(e)(4)(A) as essentially a term of art. We held that a disclosure need not be made to the public at large to qualify as "public" under the statute. 255 F.3d at 1161–62. A disclosure made to a single individual can constitute a "public disclosure" *as to that individual* in certain circumstances, even though it might not constitute a public disclosure as to other individuals. *Id.* A public disclosure as to one member of the public, we stressed, doesn't mean that a public disclosure has occurred "as to some other member of the public who independently comes upon information already possessed by the government." *Id.* at 1162.

To understand why we adopted that reading of the statute, a brief description of the facts in *Seal 1* is required. The

relator in that case, Abraham Gale, worked for a company (Packard-Bell) that submitted fraudulent claims to the federal government. *Id.* at 1156. Gale filed a *qui tam* action against Packard-Bell and subsequently developed a relationship with lawyers from the United States Attorney's Office investigating the fraud. *Id.* They showed Gale documents relating to their investigation of a competitor company, Zenith, which suggested that Zenith was perpetrating a similar type of fraud. *Id.* at 1156–57. Gale turned around and filed a separate *qui tam* action against Zenith based on the very same information disclosed to him by the government lawyers. *Id.*

We held that the government's disclosure of information relating to Zenith constituted a "public disclosure" as to Gale. *Id.* at 1163. We concluded that disclosure of information to a single individual can constitute a public disclosure under § 3730(e)(4)(A) if that individual is a "member of the public" for purposes of the investigation at issue. *Id.* at 1162. Gale was a "member of the public" for purposes of the Zenith investigation because he was "an outsider to the investigation." *Id.*

In *Seal 1*, we had no occasion to define with precision the meaning of "outsider." Gale was neither an employee of the target of the investigation (Zenith) nor an employee of the government—the two categories of individuals who, even under the broadest reading of our precedents, could be deemed "insiders." *See United States ex rel. Schumer v. Hughes Aircraft Co.*, 63 F.3d 1512, 1518–19 (9th Cir. 1995), *vacated on other grounds*, 520 U.S. 939 (1997); *United States ex rel. Hagood v. Sonoma Cnty. Water Agency*, 929 F.2d 1416, 1419–20 (9th Cir. 1991). That made it easy to

conclude that Gale was an "outsider" to the Zenith investigation.

Under our holding in *Seal 1*, the Grace deposition constitutes a public disclosure as to the Malhotras. The Malhotras were "outsiders" to the administrative investigation conducted by the Trustee's Office, which was entirely independent of the Malhotras' own investigation. The Malhotras weren't employees of Steinberg or any of the other defendants, and they weren't employed in any capacity by the Trustee's Office or any government agency related to the Trustee's Office.

The Malhotras attempt to distinguish *Seal 1* in two ways. First, the Malhotras argue that, unlike the "outsider" in *Seal 1*, they were "insiders" to the Grace deposition. In their view, because the Grace deposition occurred in their own bankruptcy case, they had the right to attend while other members of the general public would have been excluded. Defendants argue just the opposite, maintaining that anyone can attend a deposition noticed under Rule 2004.

We don't have to decide who has the better of this argument. Whether the Grace deposition was open to the public isn't relevant because the public disclosure bar was triggered in this case by a disclosure in an "administrative . . . *investigation*," not by a disclosure in a "civil[] or administrative *hearing*." 31 U.S.C. § 3730(e)(4)(A) (emphasis added). So the relevant question is not whether the Malhotras were insiders to the Rule 2004 *deposition*, but rather whether they were insiders to the Trustee's Office *investigation*. As we've explained, under *Seal 1* the Malhotras were outsiders to that investigation, which renders the Grace deposition a public disclosure as to the Malhotras.

Whether the deposition would constitute a public disclosure as to some other member of the public—say, someone who didn't actually attend the deposition—is an entirely different question that we need not and do not address.

Second, the Malhotras attempt to distinguish *Seal 1* by arguing that, when they attended the Grace deposition, they didn't know they could file an action under the False Claims Act, and thus were not seeking at that point to take advantage of the disclosure by filing such an action. It's true that in *Seal 1* we noted that the relator there had a "significant incentive (and no disincentive) to use allegations of fraud by Zenith to his own advantage"—namely, by filing a False Claims Act suit against Zenith. 255 F.3d at 1161. But, by making that declaration, we didn't intend to establish additional criteria for being a "member of the public." We discussed Gale's incentives only to explain why, as a general matter, the test we established was in accord with the purposes of the statute. All that *Seal 1* requires is that the recipient of the disclosure be "an outsider to the investigation who *now* seeks to profit from it as an FCA relator." *Id.* at 1162 (emphasis added). Thus, while we credit the Malhotras' assertion that they didn't know anything about the False Claims Act when they attended the Grace deposition, that fact has no bearing on the analysis under *Seal 1*.

B

Because the Malhotras' action is based upon a "public disclosure" of the kickback scheme transactions, subject matter jurisdiction exists only if they are "original source[s]" of the information under § 3730(e)(4)(B).

To qualify as original sources, the Malhotras must show, among other things, that they have "direct and independent knowledge" of the information underlying the allegations on which their action is based—that is, the kickback scheme allegations. § 3730(e)(4)(B); *see Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 470–72 (2007). We need not decide whether the Malhotras had "direct" knowledge, for we conclude that whatever knowledge they had was not "independent."

Independent knowledge ordinarily means knowledge that preceded the public disclosure. *Meyer*, 565 F.3d at 1202. So here, the Malhotras were required to show that they knew of the information underlying the kickback scheme allegations before they attended the Grace deposition. The district court correctly held that the Malhotras failed to make that showing. Although the Malhotras had suspicions about Steinberg long before the Grace deposition took place, they did not know of a single kickback paid to Steinberg until they attended the deposition and heard Grace describe the scheme. (As Mrs. Malhotra put it, they had an "ah-ha moment" when they heard Grace's testimony.) The Malhotras' generalized suspicion that Steinberg was receiving payment "on the side" doesn't constitute knowledge of the kickback scheme. *See United States ex rel. Aflatooni v. Kitsap Physicians Servs.*, 163 F.3d 516, 525–26 (9th Cir. 1999). At best, before the Grace deposition, the Malhotras could only speculate that Steinberg was receiving a percentage of the commissions paid to Grace; they had no information about money having changed hands in that fashion. In fact, the information they did have suggested that Steinberg's "on the side" payments consisted of a cut of the profits earned on the resale of bankruptcy estate property (the straw man transactions), not a cut of the commissions paid on the initial sale of the property (the

kickback scheme). Because the Malhotras' knowledge of the kickback scheme, as opposed to their general suspicions about Steinberg, derived entirely from the Grace deposition, that knowledge is not independent under § 3730(e)(4)(B).

The Malhotras argue that the district court did not give sufficient weight to all the work they did prior to the Grace deposition. We recognize that the Malhotras spent countless hours reviewing real estate records to uncover the alleged straw man transactions. But even if the Malhotras had direct and independent knowledge of the information underlying those transactions—a question we need not resolve—that fact wouldn't help them here. The original source analysis must be conducted on a claim-by-claim basis. *See Rockwell*, 549 U.S. at 476. The district court ruled that the Malhotras' claims rested on the *kickback scheme* transactions, not the straw man transactions, and the Malhotras haven't challenged that ruling on appeal. As a result, the only question before us is whether the Malhotras are original sources of the information underlying the kickback scheme allegations. For the reasons given above, we conclude that they are not.

III

The Malhotras do not challenge the district court's award of costs to defendants under 28 U.S.C. § 1919, beyond arguing that the award should be vacated if the district court's decision dismissing their action is reversed. Having concluded that the district court's decision must be affirmed, we find no basis for disturbing the costs award.

**AFFIRMED.**