**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff - Appellee*,

v.

SHAUN ALLAHYARI,

*Defendant - Appellant*,

and

KOMRON M. ALLAHYARI,

*Defendant*.

No. 22-35422

D.C. No. 2:17-cv-00668-TSZ

OPINION

Appeal from the United States District Court
for the Western District of Washington
Thomas S. Zilly, District Judge, Presiding

Argued and Submitted September 12, 2023
Seattle, Washington

Filed April 17, 2024

Before: Michael D. Hawkins, Ryan D. Nelson, and Daniel
P. Collins, Circuit Judges.

Opinion by Judge Collins

# SUMMARY[*]

## Tax

The panel dismissed an appeal for lack of jurisdiction, in an action by the government to reduce federal tax liens to judgment and foreclose on real property, because there was no final decision to appeal.

The order that taxpayer sought to appeal found that the government was entitled to foreclose on the tax liens, and to the sale of certain real property. However, the order was not final because the district court did not have sufficient information to enter an order for judicial sale. Instead, the district court ordered the parties to submit a Joint Status Report. Taxpayer filed his notice of appeal before the parties submitted the Joint Status Report and stipulated to the value of the property to be sold. The district court still has not entered an order for judicial sale.

Taxpayer contended that the district court's subsequent entry of an order resolving the value of the property ripened the premature notice of appeal into an effective appeal of what he contended was the then-final judgment of foreclosure. The panel first explained that, although a premature notice of appeal "filed after the court announces a decision or order—but before the entry of the judgment or order—is treated as filed on the date of and after the entry," Fed. R. App. P. 4(a)(2), this rule was inapplicable here. The rule was intended to protect unskilled litigants from failing to timely file a notice of appeal from what they reasonably

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

believe to be a final judgment, such as where the only steps that remain to produce a final decision are essentially ministerial tasks. This rule could not be stretched to cover a premature notice of appeal directed at an order that explicitly deferred resolution of the quantification of a monetary award and that called for briefing from the parties on that issue. Taxpayer's premature notice of appeal thus would not have been effective to appeal any later final judgment if indeed there were one here. But the panel further held that, in any event, Taxpayer was wrong in contending that there was now a final judgment. The panel clarified that, for a decree of sale in a foreclosure suit to be considered a final decree for purposes of an appeal, it must settle all of the rights of the parties and leave nothing to be done but to make the sale and pay out the proceeds. Because that standard was not met in this case, there still was no final judgment. The panel therefore dismissed the appeal for lack of jurisdiction.

## COUNSEL

Rachel I. Wollitzer (argued) and Jacob Christensen, Attorneys; David A. Hubbert, Deputy Assistant Attorney General; Nicholas W. Brown, United States Attorney; United States Department of Justice, Tax Division, Appellate Section, Washington, D.C.; Morgan B. Hlinka, Trial Attorney; United States Department of Justice, Tax Division, Washington, D.C.; for Plaintiff-Appellee.

Curtis Isacke (argued) and Avi J. Lipman, McNaul Ebel Nawrot & Helgren PLLC, Seattle, Washington, for Defendant-Appellant.

# OPINION

COLLINS, Circuit Judge:

Shaun Allahyari appeals the district court's order concluding that a deed of trust granted in Shaun's favor by his son Komron Allahyari was a fraudulent transfer that lacks priority over the Government's federal tax liens against Komron.[1]  We conclude that the challenged order is not a final decision and that we therefore lack jurisdiction over this appeal under 28 U.S.C. § 1291.  Accordingly, we dismiss this appeal for lack of jurisdiction.

## I

In April 2005, Komron filed late tax returns for the years 1999–2002, and a tax return for 2004.  Although these returns showed that Komron owed various amounts to the Internal Revenue Service ("IRS"), he did not include any payments with these returns.  The IRS subsequently assessed unpaid income taxes, interest, and penalties against Komron.

In April 2017, the Government filed this action in which, *inter alia*, it sought to reduce the IRS's assessments to a judgment and to obtain foreclosure relief, in partial satisfaction of these liabilities, with respect to a residence owned by Komron in Mercer Island, Washington (the "Mercer Island Property").  Shaun was named as an additional Defendant with respect to the foreclosure-related claims, because he was the beneficiary of two deeds of trust that were recorded against the Mercer Island Property.  In June 2018, Komron and the Government stipulated to the

---

[1] Because Shaun Allahyari and Komron Allahyari share the same last name, we will generally refer to them only by their respective first names.

entry of a partial judgment that fully resolved the IRS's claims for a monetary judgment concerning the amounts assessed.[2]   Under the terms of that partial judgment, a monetary judgment was entered against Komron in the total amount of $3,910,470.35, plus "interest and statutory additions from June 14, 2018."

With that partial judgment in place, three claims in the Government's operative amended complaint against Komron and Shaun were left for resolution: (1) a request for a declaration that any mortgage or deed of trust granted by Komron in Shaun's favor was invalid or unenforceable and that Komron "owns the [Mercer Island] Property free and clear of Defendant Shaun Allahyari's purported interest"; (2) a request for an order declaring that any such deeds of trust were fraudulent transfers and setting them aside under Washington law; and (3) for an order, under Internal Revenue Code ("I.R.C.") § 7403(c), that would (i) foreclose on the various federal tax liens that had arisen from the IRS assessments and that the IRS had recorded against the Mercer Island Property beginning in 2005; and (ii) order the sale of the property, with the proceeds "to be applied toward satisfaction of the outstanding and unpaid tax assessments."[3]

---

[2] Komron's ex-wife, Leslie Cover, was originally named as a co-defendant with respect to at least some of the amounts assessed, but in April 2018, the Government stipulated to Cover's dismissal from the case, without prejudice.

[3] The Government had also initially named King County as an additional defendant because of the concern that it might assert an interest in the Mercer Island Property.  But in July 2017, the Government stipulated to King County's dismissal from the suit, without prejudice.  The stipulation between the Government and King County agreed that, pursuant to I.R.C. § 6323(b)(6), the Government would "include in any

These remaining claims challenged two distinct deeds of trust that had been granted by Komron in favor of Shaun. The first was a 2003 deed of trust on the Mercer Island Property that had initially been granted by Komron to the Boeing Employees' Credit Union ("BECU") as security for a $400,000 loan. After Komron defaulted on that loan, Shaun borrowed money in order to pay BECU the outstanding balance of the loan, and Shaun took an assignment of the BECU loan and the 2003 deed of trust. BECU's formal assignment of that deed of trust to Shaun was recorded on September 8, 2010. On the parties' cross-motions for summary judgment, the district court held that, as a matter of law, Shaun had "with respect to the amount he paid to BECU in exchange for the assignment ($383,044.74), the same priority position that BECU had as to its security interest in the real property at issue, which is senior to the Government's tax liens." The court, however, left for trial the question whether "any interest that has accrued with respect to the amount defendant Shaun Allahyari paid to BECU has priority over the Government's tax liens." At that subsequent bench trial, the district court ruled in Shaun's favor on this issue, holding that "Shaun is entitled to priority over the United States' federal tax liens with respect to interest that has accrued on the amount Shaun paid to BECU."

The second deed of trust that the Government challenged had been granted by Komron to Shaun on July 25, 2005 and formally recorded against the Mercer Island Property the next day. At the bench trial, the district court ultimately

proposed order of sale a provision that any and all liens King County may have on the [Mercer Island] Property for unpaid real property taxes or special assessments at the time of sale be satisfied from the proceeds of sale prior to any distribution on the federal tax liens."

ruled for the Government on this claim. The court preliminarily agreed with Komron and Shaun that various "transfers" made by Shaun to Komron "beginning in 1991 through 2005 were bona fide loans, not gifts." Although the 2005 deed of trust was purportedly granted to secure Komron's performance with respect to such loans, the district court nonetheless held that the 2005 deed of trust did not take priority over the federal tax liens. The court relied on two alternative grounds in reaching this conclusion. First, the court held that the 2005 deed of trust did not meet the requirements of federal and Washington law to qualify as a "security interest" that would be entitled to priority over a later-recorded tax lien under I.R.C. § 6323(a). *See* I.R.C. § 6323(h)(1) (defining "security interest" in part based on incorporation of state law). Second, the court held that the 2005 deed of trust was "voidable under Washington's Uniform Fraudulent Transfer Act because Komron intended to 'hinder, delay, or defraud' the United States" in granting the 2005 deed to Shaun. *See* REV. CODE WASH. § 19.40.041(1)(a).

On October 30, 2018, the district court entered a formal judgment in accordance with these findings, and that judgment specifically "foreclosed" the IRS's tax liens and ordered that the Mercer Island Property "shall be sold pursuant to 26 U.S.C. § 7403 and 28 U.S.C. § 2001, with the net proceeds to be disbursed as set forth" in a simultaneously filed "Order of Foreclosure and Judicial Sale." The latter order contained detailed instructions concerning the "terms and conditions of the sale," which was to be conducted by the U.S. Marshal or an IRS "Property Appraisal and Liquidation Specialist," and the order also contained detailed instructions concerning the distribution of the proceeds.

Both Shaun and the Government appealed, and we reversed and remanded. *United States v. Allahyari*, 980 F.3d 684 (9th Cir. 2020). We concluded that the district court had applied the wrong legal standards in both of its alternative grounds for concluding that the 2005 deed of trust did not have priority over the federal tax liens. *Id.* at 689–92. We also held, in the Government's cross-appeal, that the district court failed to consider the effect of the Washington "statute of limitations when calculating the value of Shaun's senior lien under the BECU Deed of Trust." *Id.* at 694.

After receiving additional briefing on remand, the district court on March 31, 2022 issued an order again concluding that the 2005 deed of trust was a fraudulent transfer and that a foreclosure order in the Government's favor was warranted.

The district court noted that the only error that this court had identified with respect to the earlier fraudulent transfer finding was that the district court had applied the "preponderance of the evidence" standard rather than the "clear-and-satisfactory-proof standard" that applied under the relevant Washington law. *Allahyari*, 980 F.3d at 692. Accordingly, the district court re-evaluated the relevant factors under that standard and concluded that the Government had "met its burden to demonstrate that the 2005 Deed of Trust was a fraudulent transfer by clear and satisfactory proof." Because the court found that the 2005 deed was voidable as a fraudulent transfer, it explicitly declined to address, on remand, whether Shaun had adequately established a "security interest" within the meaning of I.R.C. § 6323.

As to the 2003 BECU deed of trust that had been assigned to Shaun and that had priority over the

Government's liens, the district court on remand resolved certain legal issues between the parties as to how the statute of limitations applied. However, the court ultimately concluded that it did not have sufficient information or assistance from the parties to make what it believed to be the necessary calculations to determine the amounts secured by the BECU deed. Accordingly, the court ordered the parties to "meet and confer" and to "submit a Joint Status Report" setting forth their views as to five specified issues.

The district court further held that, although the court had "limited discretion to not order a foreclosure sale," Shaun had failed to show that a favorable exercise of such discretion was warranted here. Accordingly, the court concluded that "[t]he United States has established it has valid federal tax liens against the [Mercer Island] Property, and therefore the United States is entitled to judgment and to foreclose those liens, sell the [Mercer Island] Property, and apply the proceeds toward its tax liens."

The district court stated, however, that it would "delay entering an order for judicial sale until after it ha[d] received the requisite Joint Status Report from the parties and ha[d] determined how to calculate the value of the BECU Deed of Trust." On May 23, 2022, the parties submitted a Joint Status Report stating that they had "reached a tentative agreement regarding the value of the BECU Deed of Trust" and requesting additional time to "memorialize their agreement via stipulation."

On May 27, 2022, Shaun filed a notice of appeal from the March 31, 2022 order.

On June 2, 2022, the parties filed their stipulation regarding the value of the BECU Deed of Trust. The district court entered an order approving the stipulation on June 29,

2022. In the order, the court adopted the parties' stipulation that the "value of the BECU Deed of Trust as of May 1, 2022 is $620,000." The order also set forth how interest would be calculated on that sum. The final paragraph of the order provides as follows: "The parties' agreement does not impact or waive the United States' ability to seek a sale of the [Mercer Island Property] . . . or Shaun Allahyari's right to oppose such a sale." There are no further relevant subsequent entries on the district court's docket. In particular, the district court has not entered on remand, as it previously had in October 2018, an order for judicial sale.

## II

At the threshold, the Government contends that we lack jurisdiction over this appeal under 28 U.S.C. § 1291 because the district court did not enter a final judgment and order of sale. We agree.

Under § 1291, the courts of appeals are authorized to hear "appeals from all final decisions of the district courts." 28 U.S.C. § 1291. "A final decision 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Hall v. Hall*, 584 U.S. 59, 64 (2018) (quoting *Ray Haluch Gravel Co. v. Central Pension Fund of Operating Eng'rs & Participating Emps.*, 571 U.S. 177, 183 (2014)). Finality in this sense "is to be given a practical rather than a technical construction," *Microsoft v. Baker*, 582 U.S. 23, 37 (2017) (quoting *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 171 (1974)), and a judgment will be deemed final "if it fully adjudicates the issues and clearly evinces the district court's intention that it be that court's final act in the matter." *Long Beach Area Chamber of Com. v. City of Long Beach*, 603 F.3d 684, 690 (9th Cir. 2010); *accord FirsTier Mortg. Co. v. Investors Mort. Ins. Co.*, 498 U.S. 269, 273–

74 (1991).  We conclude that, under these standards, Shaun's appeal was not taken from a final decision.

As an initial matter, at the time that Shaun filed his notice of appeal from the March 31, 2022 order, the district court had not yet determined the "value of the BECU Deed of Trust," which the court had held was senior to the Government's tax liens here.  For that reason alone, the order appealed from was plainly not final at the time that this appeal was taken.  The Supreme Court has squarely held that a foreclosure decree that referred to a special master the determination of "the extent and amount of all liens prior to said general mortgage upon the properties thereby covered" was not a "final decree within the meaning of that term as used in the statutes which provide for appeals to th[e] [Supreme] [C]ourt from the final decrees of the Circuit Courts in cases of equity jurisdiction." *Parsons v. Robinson*, 122 U.S. 112, 114 (1887).  The decree in *Parsons* left several other substantive issues open as well, including key details as to the manner in which the foreclosure sale was to be conducted.  *Id*. at 115.  The Court held that, "[u]ntil the particulars of the prior liens are ascertained," and the additional issues concerning the manner of the sale resolved, "the rights of the parties will not have been sufficiently settled" so as to allow an appeal to be taken.  *Id*.  So too here, the March 31, 2022 order did not resolve the value of the senior BECU deed of trust, but instead directed the parties to provide their respective views concerning a variety of substantive issues on that score.  On its face, the order did not "fully adjudicate[] the issues," nor did it "clearly evince[] the district court's intention that it be that court's final act in the matter." *Long Beach Area Chamber of Com.*, 603 F.3d at 690.  The fact that, at the time the notice of appeal was filed, the parties had jointly reported to the district court that

they had reached a tentative agreement on the open issues concerning the BECU deed of trust did not suffice to make the March 31, 2022 order final.  Notwithstanding that joint report, the district court had neither been presented with, nor had it yet adopted, any substantive resolution of those issues at the time that Shaun filed his notice of appeal.  In the absence of such a ruling, the district court unquestionably had not yet entered a final decision.  At the time of its filing, Shaun's notice of appeal therefore was directed at a non-final, non-appealable order.

Shaun does not contest this point, but he insists that, with the district court's subsequent entry of the June 29, 2022 order resolving the value of the BECU deed of trust, his premature notice of appeal ripened into an effective appeal of the then-final judgment of foreclosure.  However, if Shaun were correct that the June 29, 2022 order, without more, sufficed to produce a final, appealable decision, the result would be that Shaun would thereby now have *lost* his appellate rights with respect to the March 31, 2022 and June 29, 2022 orders.  That is because (1) Shaun did not file a *new* notice of appeal within the 60-day statutory jurisdictional time limit after the entry of the June 29, 2022 order, *see* 28 U.S.C. § 2107(b); and (2) under our settled caselaw, Shaun's May 27, 2022 *premature* notice of appeal cannot be applied to what he posits is a June 29, 2022 final decision.

The latter point follows from our decision in *Kennedy v. Applause, Inc.*, 90 F.3d 1477 (9th Cir. 1996).  There, the plaintiff filed a notice of appeal from a post-judgment order awarding attorney's fees, but that order explicitly left the amount to be awarded "undetermined," and the district court "requested further submissions from both parties in order to assist it in this determination."  *Id*. at 1482–83.  We held that the notice of appeal was "premature" and that it was not

effective to place before this court the subsequent final order fixing the amount of attorney's fees. *Id*. In reaching this conclusion, we noted that, under Federal Rule of Appellate Procedure 4(a)(2), a premature notice of appeal "filed after the court announces a decision or order but before the entry of the judgment or order is treated as filed on the date of and after the entry." FED. R. APP. P. 4(a)(2) (1995) (quoted in *Kennedy*, 90 F.3d at 1482).[4] We observed that this rule "was intended to protect the unskilled litigant who files a notice of appeal from a decision that he reasonably but mistakenly believes to be a final judgment, while failing to file a notice of appeal from the actual final judgment." *Kennedy*, 90 F.3d at 1483 (quoting *FirsTier Mortg.*, 498 U.S. at 276). As we explained, this rule protects those who file a premature notice of appeal, when the only steps that remain to produce a final decision are essentially "ministerial task[s]." *Id*. (citation omitted); *see also Weston Family P'ship LLLP v. Twitter, Inc.*, 29 F.4th 611, 618 (9th Cir. 2022) (holding that, under Rule 4(a)(2), a subsequent district court order formally dismissing the case after the plaintiff declined to amend the complaint "cured the premature notice of appeal" directed to the prior order dismissing the plaintiff's complaint with leave to amend).

But we concluded in *Kennedy* that Rule 4(a)(2) could not be stretched to cover a premature notice of appeal directed at an order that explicitly deferred resolution of the quantification of a monetary award and that called for briefing from the parties on that issue. *Kennedy*, 90 F.3d at 1483. A litigant could not "reasonably" believe such an order to be final, and the tasks left to be completed by such an order were far from ministerial. *Id*. Because Shaun's

---

[4] The current version of Rule 4(a)(2) is identical, except that the phrase "but before the entry of the judgment or order" is now set off by dashes.

premature notice of appeal was directed at a March 31, 2022 order that explicitly left the amounts to be awarded from the foreclosure sale unsettled and that asked for submissions from the parties on that issue, that notice of appeal was defective under *Kennedy* and cannot be applied to the subsequent order that provided the court's substantive resolution of the merits of that open issue.

Fortunately for Shaun, however, he is wrong in contending that the June 29, 2022 order, without more, was sufficient to produce a final judgment in this case. As our prior discussion indicates, the Supreme Court in *Parsons* further held that, in order for a foreclosure order to be considered final and appealable, that order must determine, not only the amount of any superior liens, but also "what the order of sale of said mortgage properties shall contain" so that the court's "ministerial officers can proceed to carry the decree into execution." *Parsons*, 122 U.S. at 115 (citation and internal quotation marks omitted). Thus, in order for a "decree of sale in a foreclosure suit" to qualify as "a final decree for the purposes of an appeal," the court's order must "settle[] all the rights of the parties and leave[] nothing to be done but to make the sale and pay out the proceeds." *Grant v. Phoenix Mut. Life Ins. Co.*, 106 U.S. 429, 431 (1882). Here, several aspects of the record make clear that, under these standards, the district court has not yet issued a sufficiently final order of sale that settles all of the rights of the parties and that can be ministerially executed without further substantive input from the court.

First, the district court expressly stated in its March 31, 2022 order that it intended to issue a separate and further "order for judicial sale," but that it would "delay entering" that order "until after it has received the requisite Joint Status Report from the parties and has determined how to calculate

the value of the BECU Deed of Trust." The subsequent June 29, 2022 order does not constitute that separate "order for judicial sale," nor does it in any way indicate that the district court had changed its mind about issuing such a separate order. On the contrary, the June 29, 2022 order delimits Shaun's agreed-upon right to recover "sums under the BECU Deed of Trust" "in connection with a sale of the property, *if ordered*," and it further preserves "the United States' ability to *seek a sale* of the subject property" and "Shaun Allahyari's right *to oppose such a sale*" (emphasis added). On their face, the district court's orders do not "clearly evince[] the district court's intention that [they] be that court's final act in the matter." *Long Beach Area Chamber of Com.*, 603 F.3d at 690. By confirming that a sale would be the subject of a further order, they instead confirm the exact opposite.

Second, as in *Parsons*, the lack of a final decision is confirmed by the absence of any order specifying the necessary substantive requirements governing how the sale should be conducted and the proceeds distributed. This is not a minor matter. Among other things, nothing in the March 31, 2022 or June 29, 2022 orders contains the sort of needful details that were supplied in the district court's *previous* formal order of sale that was reversed by our opinion in the prior appeal. In particular, the prior order of sale clearly specified the sequence in which the funds obtained from a sale should be paid out: first to the IRS, but only "for allowed costs and expenses of sale"; second, to King County "for unpaid real property taxes or special assessments"; third, to Shaun for the amounts due in connection with the BECU deed of trust; and fourth to the IRS for the tax liens. Nothing in the March 31, 2022 or June 29, 2022 orders explicitly addresses this crucial subject.

Although it might be reasonable to assume that the court would probably follow the same ruling it had previously made on that score, the fact remains that, after the case was remanded for new proceedings concerning the merits, the district court never did issue such an order.  Moreover, in contrast to the prior formal order of sale, there is nothing in either of the 2022 orders that sets forth *any* details about how the sale is to be conducted.  Again, it is perhaps reasonable to think that the district court would impose the same conditions that it did before the prior appeal, but it has not yet taken any action that can be said, even by implication, to have done so.  With this many loose ends, the district court has neither "fully adjudicate[d] the issues," nor has it "clearly evince[d] [its] intention" that its two post-remand orders are "that court's final act in the matter."  *Long Beach Area Chamber of Com.*, 603 F.3d at 690.

In arguing for a contrary conclusion, Shaun points to our decision in *Citicorp Real Estate, Inc. v. Smith*, 155 F.3d 1097 (9th Cir. 1998), but that case instead confirms the correctness of our holding.  In *Citicorp Real Estate*, the district court *did* "order[] the property securing the loans to be sold at a judicial foreclosure sale," and no party contended that any further order of the district court was necessary to accomplish that sale.  *Id*. at 1100.  Instead, Citicorp argued that there was nonetheless no final, appealable decision under § 1291 because the district court had also entered deficiency judgments against the borrowers, with the precise amount of those judgments to be fixed after it was known exactly how much was left over from the proceeds of the sale.  *Id*. at 1101.  We held that this ministerial post-sale calculation did not detract from the fact that the district court's orders had "conclusively determine[d] the rights of the parties to the litigation."  *Id*.

In contrast to *Citicorp Real Estate*, the issue here is not a ministerial question about the post-sale application of funds in accordance with the court's pre-sale instructions. Rather, the problem here is that the district court has not issued the necessary pre-sale instructions in the first place.

In all events, we now clarify that, in accordance with more than 100 years of Supreme Court precedent, for "a decree of sale in a foreclosure suit" to be considered "a final decree for the purposes of an appeal" under § 1291, it must "settle[] all the rights of the parties and leave[] nothing to be done but to make the sale and pay out the proceeds" in accordance with the decree's terms. *Grant*, 106 U.S. at 431. For the reasons we have explained, that standard is not met in this case.

Shaun complains that adherence to such a rule is "inefficient" in this case, because it requires him to return to the district court and obtain a final decision and then "to pursue a new appeal." That may be so, but clear jurisdictional rules also have the countervailing benefit of avoiding traps for the unwary. Indeed, if we did not apply such a bright-line rule here, the supposedly efficient result would be that, as we have explained, Shaun would have no appeal at all.

### III

For the foregoing reasons, this appeal is dismissed for lack of jurisdiction.

**DISMISSED.**