NOT FOR PUBLICATION
UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT



FILED

FEB 4 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

UNITED STATES OF AMERICA, EX. REL. 3729, LLC,

Plaintiff-Appellant,

v.

EVERNORTH HEALTH, INC.; EXPRESS SCRIPTS, INC.,

Defendants-Appellees.

No. 23-55645

D.C. No. 3:19-cv-01199-TWR-WVG

MEMORANDUM[*]

Appeal from the United States District Court
for the Southern District of California
Todd W. Robinson, District Judge, Presiding

Argued and Submitted June 7, 2024
Pasadena, California

Before: CLIFTON, COLLINS, and LEE, Circuit Judges.

The *qui tam* provisions of the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.*, "allow[] private citizens, referred to as 'relators,' to bring fraud claims on the government's behalf against those who have violated the Act's prohibitions." *Silbersher v. Valeant Pharms. Int'l., Inc.*, 89 F.4th 1154, 1158 (9th Cir. 2024). However, under the "FCA's public disclosure bar," a would-be relator may not pursue an FCA action "alleg[ing] fraud that has already been publicly disclosed,

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

unless the relator qualifies as an 'original source.'" *United States ex rel. Mateski v. Raytheon Co.*, 816 F.3d 565, 569 (9th Cir. 2016) (quoting 31 U.S.C. § 3730(e)(4)). In the proceedings below, the district court held that the public-disclosure bar precluded this FCA *qui tam* action brought by Plaintiff-Appellant 3729, LLC ("Relator") against Defendant-Appellee Express Scripts, Inc. ("ESI").[1] The court therefore dismissed the action. We reverse and remand for further proceedings.

## I

The U.S. Department of Defense ("DoD") provides health care benefits and insurance through a program known as "Tricare." Among the services that Tricare provides are prescription drug dispensing and delivery, and beginning in 2003, those services were supplied by ESI. Under the regulations that apply to ESI's participation in Tricare, "fraud" presumptively includes "[b]illings" or "claims" that "involve flagrant and persistent overutilization of services without proper regard for results, the patient's ailments, condition, medical needs, or the physician's orders" or that are "for services which would be covered except for the frequency or duration of the services." *See* 32 C.F.R. § 199.9(c)(2), (5); *see also id.* § 199.21(p) (stating that § 199.9 is "applicable to the TRICARE pharmacy benefits program").

---

[1] Relator also named, as an additional Defendant, Express Scripts Holding Company, now known as "Evernorth Health, Inc." In the district court, Relator acquiesced in the dismissal of this additional Defendant without prejudice.

Relator alleges that "from at least October 2009 . . . until approximately early 2018, [ESI] . . . systemically dispens[ed] significantly more pills" than Tricare beneficiaries needed. Specifically, Relator alleges that ESI "(1) enroll[ed] as many Tricare beneficiaries as possible" into ESI's "automatic delivery" program; and (2) "calibrat[ed] the logic of [ESI's] pharmacy dispensing software" so that "for a 90-day supply prescription on auto-refill, a full 90-day supply of pills was dispensed on day 60 (*i.e.*, at the 67% usage date) and again every 60 days thereafter." According to the complaint, if one "[a]ssum[es] a dosage of one pill per day, this auto-refill pattern caused an excess of 265 pills—an extra nine-month supply—to be dispensed for each prescription over the course of a year." Relator further alleges that ESI management received multiple reports about excessive auto-refills, including from patients, but that ESI ignored these reports and did not correct its dispensing software to account for the issue.

According to Relator, during an audit conducted by the DoD's Inspector General, ESI withheld information that might have led to the discovery of its systematic overfilling of prescriptions. Relator also alleges that ESI, when it operates in other contexts as a *payer* of drugs, closely monitors pharmacies in its network and takes active steps to mitigate waste in the form of excess drug supplying and early auto-refills. Finally, Relator alleges that ESI only changed its refill practices in late 2017 or early 2018 in order to "avoid detection." Relator

3

asserts that ESI's elimination of this systematic oversupplying of drugs coincided with a change in the Tricare program that imposed copayment responsibility on beneficiaries. According to Relator, ESI knew that, if beneficiaries were forced to partially pay for excess medications, they would file complaints, which would increase the risk of further audits.

Based on these allegations, Relator filed a *qui tam* complaint against ESI, alleging a single cause of action for submission of false claims in violation of 31 U.S.C. § 3729(a)(1)(A)–(B). After the United States declined to intervene in the action, ESI was served with the complaint and filed a motion to dismiss. The district court ultimately dismissed the suit under Federal Rule of Civil Procedure 12(b)(1), holding that, under the public-disclosure bar, the court lacked jurisdiction over the action. The district court granted leave to amend to attempt to cure this deficiency, but Relator declined to amend and instead filed a motion requesting that the district court enter a final, appealable judgment. While that motion was still pending, Relator filed a notice of appeal. The district court subsequently granted that motion and entered final judgment. We have jurisdiction over Relator's premature notice of appeal. *See United States v. Allahyari*, 99 F.4th 486, 492–93 (9th Cir. 2024) (stating that "under [Federal] Rule [of Appellate Procedure] 4(a)(2), a subsequent district court order formally dismissing the case after the plaintiff declined to amend the complaint 'cured the premature notice of

4

appeal' directed to the prior order dismissing the plaintiff's complaint with leave to amend" (quoting *Weston Fam. P'ship LLLP v. Twitter, Inc.*, 29 F.4th 611, 618 (9th Cir. 2022))).

## II

The alleged fraudulent conduct in this case occurred between 2009 and 2018. In March 2010, Congress amended the statutory language containing the public-disclosure bar, *see* 31 U.S.C. § 3730(e)(4), and that amendment is not retroactive. *See Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 559 U.S. 280, 283 n.1 (2010). Accordingly, in addressing whether this suit is prohibited by § 3730(e)(4), we consider both the prior and current versions of that provision.

Under the pre-2010 version of § 3730(e)(4), "[t]he public disclosure bar is triggered if three things are true: (1) the disclosure at issue occurred through one of the channels specified in the statute; (2) the disclosure was 'public'; and (3) the relator's action is 'based upon' the allegations or transactions publicly disclosed." *Malhotra v. Steinberg*, 770 F.3d 853, 858 (9th Cir. 2014) (quoting 31 U.S.C. § 3730(e)(4)(A) (2006)). Under the amended statute, the first two elements still apply, although the statutory list of channels is worded somewhat differently. As to the third element, the prior language stated that the bar applied if the "action" was "based upon the public disclosure of allegations or transactions," 31 U.S.C.

§ 3730(e)(4)(A) (2006), and the new language states that an "action or claim" is covered if "substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed," 31 U.S.C. § 3730(e)(4)(A) (2018). We have held, however, that this change in language "did not materially alter the elements required to meet the public disclosure bar." *United States ex rel. Silbersher v. Allergan, Inc.*, 46 F.4th 991, 996 n.5 (9th Cir. 2022); *see also Valeant Pharms.*, 89 F.4th at 1167. Once the public-disclosure bar is triggered, the suit is barred unless, in the words of both versions, "the person bringing the action is an original source of the information." 31 U.S.C. § 3730(e)(4)(A).[2]

The district court held that two documents establish that the public-disclosure bar is applicable here, namely, (1) a December 2013 *Army Times* article; and (2) comments discussed in the *Federal Register* in connection with a proposed rule governing the Tricare program. The parties do not dispute that the information contained in these two sources was "publicly disclosed" in one of the channels specified in each version of the statute, and we therefore assume *arguendo* that the first two elements of the public-disclosure bar are met. The question presented here is whether the third element is satisfied. Our precedent has construed the third element, under both versions of the statute, to require (1) that

---

[2] The 2010 statute, however, substantially revised the definition of an "original source" in § 3730(e)(4)(B).

the previously disclosed information contain either a "direct claim of fraud" or "facts from which fraud can be inferred"; and (2) that the fraud thus disclosed be "substantially similar to" the fraud alleged in the *qui tam* action. *Valeant Pharms.*, 89 F.4th at 1167 (citation omitted). We therefore turn to considering whether the two cited sources satisfy this standard.[3]

The district court did not hold that the two sources at issue publicly disclosed a "direct claim of fraud," nor does ESI claim that they did. *Valeant*

---

[3] In applying the public-disclosure bar, the district court noted the distinction between a "facial" and a "factual" attack on the district court's jurisdiction. A "facial attack" tests the adequacy of the allegations of jurisdiction and is resolved under the standards applicable to "a motion to dismiss under Rule 12(b)(6)." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). A "factual attack," by contrast, disputes the plaintiff's jurisdictional allegations, relies on "evidence outside the pleadings," and generally requires the district court to "resolve those factual disputes itself." *Id.* at 1121–22. We construe the district court's order as resolving a "facial" attack, because the court explicitly limited itself to the allegations of Relator's complaint and those items (such as the two public sources in question) that are properly subject to judicial notice, and because it afforded Relator leave to amend its complaint to plead additional facts that would defeat the public-disclosure bar. Because the district court thus ultimately applied the standards of Rule 12(b)(6) in evaluating the applicability of the public-disclosure bar, we have no occasion to address whether the 2010 amendment's elimination of the explicit reference to "jurisdiction" in the public-disclosure bar, *compare* 31 U.S.C. § 3730(e)(4)(A) (2006) (stating that "[n]o court shall have jurisdiction" if the bar applies), *with* 31 U.S.C. § 3730(e)(4)(A) (2018) (stating that "[t]he court shall dismiss an action or claim" if the bar applies), means that the issue no longer has jurisdictional significance under recent Supreme Court authority, *see, e.g., Santos-Zacaria v. Garland*, 598 U.S. 411, 416 (2023) ("We treat a rule as jurisdictional only if Congress clearly states that it is." (simplified)). And, like the district court, we apply the standards of Rule 12(b)(6) in evaluating the applicability of the public-disclosure bar.

*Pharms.*, 89 F.4th at 1167 (citation omitted). The issue, rather, is whether the two sources disclosed "facts from which fraud can be inferred" that is "substantially similar to" the fraud alleged in the complaint. *Id*. (citation omitted). In describing what disclosed facts would be sufficient to infer fraud, we have stated that the "essential elements" of fraud must be covered and that this requires, at a minimum, "a misrepresented state of facts and a true state of facts." *United States ex rel. Found. Aiding the Elderly v. Horizon West Inc.*, 265 F.3d 1011, 1015 (9th Cir. 2001) (quoting *United States ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 655 (D.C. Cir. 1994) (emphasis omitted)). As explained earlier, Relator's complaint's theory of fraudulent claims rests on the applicable regulations' defining to be presumptively "fraud" any submission of "claims which involve flagrant and persistent overutilization of services without proper regard for results, the patient's ailments, condition, medical needs, or the physician's orders," 32 C.F.R. § 199.9(c)(5). The question, then, is whether either of the two sources here discloses facts from which one may reasonably infer a substantially similar theory that, in the sort of "transactions" addressed in the complaint, ESI secretly engaged in "flagrant and persistent overutilization of services" without regard to need.

The *Army Times* article does not satisfy this standard. The article described a report by the DoD Inspector General, which concluded that "Tricare's pharmacy benefit may be wasting money by continuing to ship drugs to beneficiaries who no

8

longer need them or dispensing 90-day, instead of 30-day, prescriptions." Neither of those alleged practices—*viz.*, shipping refills for a medication that is no longer needed or shipping 90-day refills rather than 30-day refills—is substantially similar to the transactions at issue here, which involve systematically shipping needed refills *too early*. The *Army Times* article then recounted a number of complaints about ESI's management of the mail-order pharmacy program, including "mix-ups that have left beneficiaries without vital medications and some drugs being out of stock." The article also stated that there were "beneficiaries with up to a year's worth of drugs piled in medicine cabinets and linen closets," and it included the following complaint from a retired servicemember who stated: "They ship 90-day supplies after 60 days. By the time I get 12 months into this, I have a nine-month supply of drugs." These statements suggest that *some* oversupplying of refills occurred, but they do not disclose any facts that would support an inference that ESI was engaged in "flagrant and persistent" overfilling of prescriptions, without regard to need, by deliberately using a systematic practice of shipping 90 days' worth of refills after 60 days. One servicemember's anecdotal experience, coupled with a vague suggestion that other beneficiaries have had similar experiences, does not supply "facts from which *fraud* can be inferred." *Valeant Pharms.*, 89 F.4th at 1167 (emphasis added) (citation omitted).

The other source on which the district court relied consisted of comments recounted in a *Federal Register* notice promulgating a rule concerning the Tricare program. *See* 81 Fed. Reg. 76307 (Nov. 2, 2016). The commenter was described as a "professional association," and it expressed "a number of concerns" about the Tricare program, including that there was "unnecessary waste resulting from auto-ship policies." *Id*. at 76309. The association recommended that DoD "implement policies to ensure mail order refills are approved and needed" and that beneficiaries be required "to consent to getting a refill rather than automatic shipping." *Id*. These comments fall far short of the applicable standard. These comments are sufficiently vague and general that they would apply equally (if not better) to the two *different* wasteful practices that had been identified in the *Army Times* article, namely, "continuing to ship drugs to beneficiaries who no longer need them or dispensing 90-day, instead of 30-day, prescriptions." Those two practices—which are not substantially similar to the fraud alleged in the complaint—fit comfortably within the commenter's complaint about "unnecessary waste resulting from auto-ship policies" and would be directly redressed by the commenter's recommendation "to ensure mail order refills are approved and needed" and that beneficiaries be required "to consent to getting a refill rather than automatic shipping." Consequently, these general comments simply do not provide enough detail to supply any basis for inferring that ESI was engaged in a

fraudulent practice that is substantially similar to deliberately sending out excessive refills too soon.

In its answering brief, ESI does not point to any other alternative source that it contends is sufficient to trigger the public-disclosure bar. Because the only two sources on which it relies are not enough to trigger the bar, the district court erred in dismissing Relator's complaint on that basis. We therefore reverse the district court's dismissal of Relator's claims under the FCA's public-disclosure bar and remand for further proceedings consistent with this memorandum.[4]

**REVERSED AND REMANDED.**

---

[4] Because we conclude that the public-disclosure bar does not apply, we have no occasion to decide whether, if it did, Relator would then qualify as an "original source."